# Exhibit 2

 **CT Corporation**

**Service of Process Transmittal**
08/04/2021
CT Log Number 540021877

| | |
|---|---|
| **TO:** | Athena Cheng, Vice President, Legal & Compliance<br>Blackstone Group Inc.<br>345 PARK AVE STE 1100<br>NEW YORK, NY 10154-1703 |
| **RE:** | **Process Served in Delaware** |
| **FOR:** | THE BLACKSTONE GROUP INC.  (Domestic State: DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Carolyn Bridges and Danny Collins, Individually and On Behalf Of All Others Similarly Situated, Pltfs. vs. The Blackstone Group Inc., etc., Dft. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 21L0695 |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 08/04/2021 at 14:21 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 08/04/2021, Expected Purge Date: 08/09/2021 |
| | Image SOP |
| | Email Notification,  Athena Cheng  athena.cheng@blackstone.com |
| | Email Notification,  Marjorie Truwit  marjorie.truwit@blackstone.com |
| | Email Notification,  Alice Fort  alice.fort@blackstone.com |
| **REGISTERED AGENT ADDRESS:** | The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801<br>866-203-1500<br>DealTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

| | |
|---|---|
| Date: | Wed, Aug 4, 2021 |
| Server Name: | Wilmington Drop Serve |
| Entity Served | THE BLACKSTONE GROUP INC. |
| Case Number | 21-L-0695 |
| Jurisdiction | DE |



STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE __TWENTIETH__ JUDICIAL CIRCUIT

__ST. CLAIR__ COUNTY

CAROLYN BRIDGES and DANNY COLLINS, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

THE BLACKSTONE GROUP INC., a Delaware corporation,

Defendants.

No. 21L0695

## SUMMONS

To each defendant: The Blackstone Group Inc., a Delaware corporation, %Registered Agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmingthon, DE 19801

You are summoned and required to file an answer in this case, or otherwise file your appearance in the Office of the Clerk of this Court __ST. CLAIR COUNTY__ building, room_____, __10 Public Sq., Belleville, IL 62220__, Illinois, within 30 days after service of this summons,
(Address)                (City)
not counting the day of service. IF YOU FAIL TO DO SO, A JUDGEMENT OR DECREE BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with indorsement of sevice and fees, if any, immediately after service. If service cannot be made, summons shall be returned so indorsed.

This summons may not be served later than 30 days after its date.

WITNESS __7/28/2021__, 20____

(Clerk of the Circuit Court)
By:__Elysia Agne__
     (Deputy)

(Plaintiff's Attorney or Plaintiff if he is not represented by an Attorney)

Name __Gregory L. Shevlin__
Attorney for _____
Address __12 West Lincoln St.__
City __Belleville, IL 62220__
Telephone __618-235-3500__

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider.
Vist https://efile.illinoiscourts.gov/servive-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp.

SHERIFF'S FEES
- Service and return ................... $_____
- Miles _____ .............. $_____
- Total ............................... $_____

_____

Sheriff of _____ County

I certify that I served this summons on defendants as follows:

(a)—(Individual defendants — personal):
(The officer or other person making service, shall (a) identify as to sex, race and approximate age of the defendant with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of the day when the summons was left with the defendant.)

_____
_____
_____

(b)—(Individual defendants — abode):
By leaving a copy and a copy of the complaint at the usual place of abode of each individual defendant with a person of his family, of the age of 13 years or upwards, informing that person of the contents of the summons. (The officer or other person making service, shall (a) identify as to sex, race and approximate age of the person, other than the defendant, with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of day when the summons was left with such person.)

_____
_____
_____

and also by sending a copy of the summons and of the complaint in a sealed envelope with postage fully prepaid, addressed to each individual defendant at his usual place of abode, as follows:

| Name of defendant | Mailing Address | Date of mailing |
|---|---|---|
| | | |
| | | |

(c)—(Corporation defendants):
By leaving a copy and a copy of the complaint with the registered agent, officer or agent of each defendant corporation, as follows:

| Defendant corporation | Registered agent, officer or agent | Date of service |
|---|---|---|
| | | |
| | | |

(d)—(Other service):

_____
_____

_____, Sheriff of _____ County

By: _____
(Deputy)

Electronically File
Kahalah A. Cla
Circuit Cler
Elysia Agn
21L069
St. Clair Count
7/27/2021 1:57 PM
1420163

STATE OF ILLINOIS
IN THE TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

| | |
|---|---|
| CAROLYN BRIDGES and DANNY COLLINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE BLACKSTONE GROUP INC., a Delaware corporation,<br><br>Defendant. | Case No. 21L0695<br><br>Plaintiffs Demand Trial By Jury |

## CLASS ACTION COMPLAINT AT LAW

Plaintiffs Carolyn Bridges and Danny Collins, individually and on behalf of all other persons similarly situated, by their undersigned attorneys, as and for their Class Action Complaint at Law for violations of the Illinois Genetic Information Privacy Act ("GIPA"), 410 ILCS 513/1, *et seq.*, against Defendant The Blackstone Group Inc. ("Blackstone" or "Defendant"), allege on personal knowledge, due investigation of their counsel, and, where indicated, on information and belief as follows:

### NATURE OF THE ACTION

1. Plaintiffs bring this action for damages and other legal and equitable remedies resulting from the illegal transfer of Illinois residents' genetic testing and information derived from genetic testing from Ancestry.com LLC ("Ancestry") to Blackstone. This transfer of highly sensitive genetic information to an unauthorized third-party without obtaining informed written consent was in direct violation of GIPA.

2. Founded in 1996, Ancestry is a global leader in family history and consumer genomics operating in more than 30 countries with a collection of 27 billion records and over 18 million people in its DNA network.

3. AncestryDNA, a subsidiary unit of Ancestry, offers a direct-to-consumer genealogical DNA test. These at-home kits allow consumers to provide a saliva sample of their DNA to the company for analysis. According to Ancestry, it then uses the saliva sample to form DNA sequences to "provide[] a more complete genetic picture" and "ethnicity estimate." Customers may also infer family relationships with other Ancestry users.

4. In December 2020, Defendant Blackstone, one of the world's largest investment firms, made a dramatic entry into the genomics space by acquiring Ancestry in a deal valued at $4.7 billion. As part of this acquisition, one of the largest private equity companies in the world acquired the largest trove of DNA data assembled by any consumer gene tester.

5. After the acquisition was initially announced in August 2020, Blackstone disclosed in a U.S. Securities and Exchange Commission filing that it will package and sell data from the companies it acquires for revenue.

6. In recognition of concerns over the security of individuals' genetic materials, the Illinois Legislature enacted GIPA, which provides, *inter alia*, that "genetic testing and information derived from genetic testimony is confidential and privileged and may be released only to the individual tested and to persons specifically authorized, in writing . . ., by that individual to receive the information." *See* 410 ILCS 513/15(a).

7. The Illinois Legislature has recognized that despite existing laws, "many members of the public are deterred from seeking genetic testing because of fear that test results will be

disclosed without consent in a manner not permitted by law or will be used in a discriminatory manner." 410 ILCS 513/5(2).

8.  Moreover, the GIPA further requires that persons or entities may not disclose or be compelled to disclose the identify of any person upon whom a genetic test is performed or the results of a genetic test in a manner that identifies the subject of the test without legal authorization. *See* 410 ILCS 513/30(a).

9.  GIPA confers on Plaintiffs and all other similarly situated Illinois residents a right to prevent such transfer and disclosures of genetic information without their written consent.

10.  Yet, through the acquisition of Ancestry, Defendant compelled the disclosure of genetic testing or information derived from genetic testing of Plaintiff and the Class without ever obtaining the requisite written consent from Plaintiff or the Class.

11.  In direct violation of the foregoing provisions of 410 ILCS 513/1, *et seq.*, Defendant has acquired—without first obtaining informed written consent—the highly sensitive genetic testing and information derived from genetic testing of thousands of Illinois residents.

12.  Plaintiffs bring this action to prevent Defendant from further violating the privacy rights of Illinois residents and to recover statutory damages for Defendant's conduct in violating Plaintiffs' genetic privacy rights.

## JURISDICTION AND VENUE

13.  Jurisdiction and venue in this Court are proper pursuant to 735 ILCS 5/2-209 of the Illinois Code of Civil Procedure. Defendant conducts business within this State and Plaintiffs' claims arise out of Defendant's unlawful in-state actions, as Defendant compelled the disclosure of genetic testing or information derived from genetic testing of Plaintiffs and the Class in this State without ever obtaining the requisite written consent.

14. Venue is proper in this Court pursuant to 735 ILCS 5/2-101(2) because Defendant does business in St. Clair County and thus resides there under 735 ILCS 5/2-102.

## PARTIES

15. Plaintiff Carolyn Bridges is, and has at all relevant times, been a resident and a citizen of St. Clair County, Illinois.

16. Plaintiff Danny Collins was at all relevant times a resident of Cook County, Illinois.

17. Defendant The Blackstone Group Inc. is an investment management company headquartered in New York, New York. It is incorporated in the state of Delaware. On August 5, 2020, Blackstone announced it had reached a definitive agreement to acquire Ancestry for $4.7 billion. On December 4, 2020, Blackstone announced that it had completed the previously announced acquisition.

## FACTUAL BACKGROUND

I. **Illinois' Genetic Information Privacy Act**

18. In 2008, Illinois enacted GIPA because "[t]he public health will be served by facilitating voluntary and confidential nondiscriminatory use of genetic testing information." 410 ILCS 513/5(3).

19. GIPA defines "genetic information" as information pertaining to: (i) the individual's genetic tests; (ii) the genetic tests of family members of the individual; (iii) the manifestation of a disease or disorder in family members of such individual; or (iv) any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual.[1]

---

[1] GIPA incorporates several terms and concepts from the Privacy Rule under the Health Insurance Portability and Accountability Act (the "HIPAA"). This includes the definition of the term "genetic information" which is defined under HIPAA Reg. 45 CFR 160.103.

4

20. GIPA provides that genetic testing and information derived from genetic testing is confidential and persons, such as Defendant, may not compel the disclosure of genetic testing and information derived from genetic testing unless specifically authorized in writing by the individual whose personal genetic information is being disclosed. *See* 410 ILCS 513/15(a), 410 ILCS 513/30(a).

21. In 2018, Illinois legislators amended GIPA to update the definition of "genetic testing" to include "direct-to consumer commercial genetic testing" companies. *See* 410 ILCS 513(10), amended by P.A., 101-0132,§ 290, eff. 1/1/2018.

22. As alleged herein, the illegal transfer of thousands of Illinois residents' genetic information from Ancestry to Blackstone without informed written consent violated 410 ILCS 513/15(a), 410 ILCS 513/30(a), and 410 ILCS 513/35 of GIPA.

II. The Illegal Transfer of Genetic Information From Ancestry to Blackstone

23. Founded in 1996, Ancestry is a global leader in family history and consumer genomics operating in more than 30 countries with a collection of 27 billion records and over 18 million people in its DNA network.[2]

24. Its massive trove of DNA data is procured through AncestryDNA®, part of the Ancestry family of companies, which provides a DNA testing service to customers. Specifically, customers receive at-home kits that allow submission of saliva samples. AncestryDNA® then uses a microarray-based autosomal DNA testing to survey a person's entire genome.[3]

25. Defendant Blackstone, considered one of the most dominant private equity companies in the world, boasts half a trillion dollars in assets under management. On August 5,

---

[2] *See* https://www.blackstone.com/press-releases/article/blackstone-completes-acquisition-of-ancestry-leading-online-family-history-business-for-4-7-billion/ (last accessed July 21, 2021).

[3] *See* https://www.ancestry.com/dna/en/legal/us/faq#about-1 (last accessed July 21, 2021).

2020, Blackstone made a dramatic entry into the genomics space when announced it had reached a definitive agreement to acquire Ancestry, a global leader in family history and consumer genomics, for $4.7 billion.[4] In announcing the deal, a senior managing director at Blackstone said he foresees Ancestry growing by "investing behind further data, functionality, and product development."[5] On December 4, 2020, Blackstone announced that it had completed its acquisition of Ancestry.[6]

26. While completing the acquisition of Ancestry, Blackstone disclosed in regulatory filings that agreements to share information between its affiliated entities have already been implemented and that its effort to package and sell data to unaffiliated third-parties is underway.[7]

27. Following Defendant's acquisition of Ancestry, Defendant disclosed on the Ancestry website that customer's genetic information would be released and/or disclosed to Defendant for its own use.[8]

28. Defendant's acquisition of individual's genetic information is also paired with their personal information, including first and last name, email address, home address, and other information.

29. In direct violation of GIPA, Blackstone compelled the disclosure of highly sensitive genetic information provided by individuals to Ancestry through its acquisition. This highly

---

[4] See https://www.blackstone.com/press-releases/article/blackstone-to-acquire-ancestry-leading-online-family-history-business-for-4-7-billion/ (last accessed July 21, 2021).

[5] Id.

[6] See https://www.blackstone.com/press-releases/article/blackstone-completes-acquisition-of-ancestry-leading-online-family-history-business-for-4-7-billion/ (last accessed July 21, 2021).

[7] See https://www.bloomberg.com/news/articles/2020-12-15/blackstone-s-next-product-could-be-data-from-companies-it-buys (last accessed July 21, 2021).

[8] See https://www.ancestry.com/cs/legal/privacystatement (last accessed July 21, 2021).

6

sensitive genetic information is now in the possession of Blackstone – all without ever informing anyone of this practice in writing.

### III. Plaintiffs' Experiences with Ancestry

30. Plaintiff Carolyn Bridges purchased an at-home DNA kit from Ancestry in or around February 2017.

31. After Plaintiff Bridges sent her saliva sample to Ancestry, her genetic material was sequenced by Ancestry. Ancestry then provided her with information derived from her genetic test, including information about her ethnic and national heritage through an ethnicity estimate.

32. Likewise, Plaintiff Danny Collins purchased an at-home DNA kit from Ancestry in or around September 2016.

33. After Plaintiff Collins sent his saliva sample to Ancestry, his genetic material was sequenced by Ancestry. Ancestry then provided him with information derived from his genetic test, including information about his ethnic and national heritage through an ethnicity estimate.

34. Plaintiffs never consented, agreed or gave permission–written or otherwise–to Ancestry to transfer their genetic testing and information derived from genetic testing to a third-party.

35. Further, Defendant never provided Plaintiffs with, nor did they ever sign a written release, allowing Defendant to take possession of their unique genetic testing and information derived from genetic testing.

36. Plaintiffs never would have provided their genetic information to Ancestry if they had known Blackstone would compel disclosure and take possession of it without their consent.

37. By compelling disclosure of Plaintiffs' highly sensitive genetic testing and information derived from genetic testing, without their consent, written or otherwise, Defendant invaded Plaintiffs' statutorily protected right to privacy, in direct violation of GIPA.

## CLASS ALLEGATIONS

38. **Class Definition:** Plaintiffs bring this action pursuant to 735 ILCS 5/2-801, *et seq.* on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All individuals who, while residing in the State of Illinois, had their genetic testing and information derived from genetic testing obtained by Defendant.
>
> Excluded from the Class are: (i) any judge or magistrate judge presiding over this action and members of their staff, as well as members of their families; (ii) Defendant, Defendant's predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant has a controlling interest, as well as Defendant's current or former employees, agents, officers, and directors; (iii) persons who properly execute and file a timely request for exclusion from the class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) counsel for Defendant; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

39. **Numerosity:** Pursuant to 735 ILCS 5/2-801(1), the number of persons within the Class is substantial, believed to amount to thousands, or potentially hundreds of thousands, of persons. It is, therefore, impractical to join each member of the Class as a named Plaintiffs. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Class is ascertainable and identifiable from Defendant's records.

40. **Commonality and Predominance:** Pursuant to 735 ILCS 5/2-801(2), there are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which

may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:

> (a) whether Defendant obtained Plaintiffs' and the Class' genetic testing and information derived from genetic testing;
>
> (b) whether Defendant's conduct is subject to GIPA;
>
> (c) whether Defendant properly informed Plaintiff and the Class that it obtained their genetic testing and information derived from genetic testing;
>
> (d) whether Defendant obtained a written release (as defined in 410 ILCS 513/15) to obtain Plaintiffs' and the Class' genetic testing and information derived from genetic testing;
>
> (e) whether Defendant's violations of GIPA were committed intentionally, recklessly, or negligently; and
>
> (f) whether Plaintiff and the Class are entitled to damages and/or other equitable relief.

41. **Adequate Representation:** Pursuant to 735 ILCS 5/2-801(3), Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of such a Class. Neither Plaintiffs nor their counsel has any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiffs have raised viable statutory claims or the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class, additional claims as may be appropriate, or to amend the Class definition to address any steps that Defendant took.

42.     **Superiority:** Pursuant to 735 ILCS 5/2-801(4), a class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class-wide relief is essential to compliance with GIPA.

## CAUSE OF ACTION

### Count I
### Violation of the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq.*
### (On behalf of Plaintiffs and the Class)

43.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

44.     GIPA mandates that genetic testing and information derived from genetic testing is confidential and privileged and may be released only to the individual tested and to persons specifically authorized in writing by that individual to receive the information. *See* 410 ILCS 513/15(a).

45.     GIPA further mandates that no person may disclose or be compelled to disclose the identify of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test. *See* 410 ILCS 513/30(a).

46. Both Defendant and Ancestry are private corporations registered to do business in Illinois and thus qualify as "persons" under GIPA. *See* 410 ILCS 513/10.

47. Defendant failed to comply with this GIPA mandate.

48. Plaintiffs and the Class are individuals who provided their genetic testing and information derived from genetic testing to Ancestry. Defendant Blackstone, through its acquisition of Ancestry, compelled disclosure and obtained Plaintiffs' and Class members' genetic testing and information derived from genetic testing, as explained in detail in above. *See* 410 ILCS 513/30.

49. Defendant failed to obtain written authorization from Plaintiffs or Class members to obtain their genetic testing and information derived from genetic testing, as required by 410 ILCS 513/15(a), 410 ILCS 513/30(a) and 410 ILCS 513/35.

50. On behalf of themselves and the Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with GIPA's requirements; (2) statutory damages of $15,000 for each intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(a)(2) or, in the alternative, statutory damages of $2,500 for each negligent violation of GIPA pursuant to 410 ILCS 513/40(a)(1); and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 410 ILCS 513/40(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Carolyn Bridges and Danny Collins, on behalf of themselves and the proposed Class, respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs as representatives of the Class, and appointing their counsel as Class Counsel;

B. Declaring that Defendant's actions, as set out above, violate GIPA, 410 ILCS 513/1, *et seq.*;

C. Awarding statutory damages of $15,000.00 for each and every intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513(40)(a)(2), or alternatively, statutory damages of $2,500.00 for each and every violation pursuant to 410 ILCS 513(40)(a)(1) if the Court finds that Defendant's violations were negligent;

D. Awarding injunctive and other equitable relief as is necessary pursuant to 410 ILCS 513(40)(a)(4) to protect the interests of the Class;

E. Awarding Plaintiffs and the Class their reasonable attorneys' fees and costs and other litigation expenses, pursuant to 410 ILCS 513/40(a)(3);

F. Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

G. Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Dated: July 27, 2021                                Respectfully submitted,

*/s/ Gregory L. Shevlin*
Gregory L. Shevlin, IL #6199414
**COOK, BARTHOLOMEW, SHEVLIN, COOK & JONES, LLP**
12 West Lincoln St.
Belleville, IL 62220
Phone (618) 235-3500
Fax: (618) 235-7286
gls@cbsclaw.com

Gary M. Klinger
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Phone: 202.429.2290
gklinger@masonllp.com

Jonathan M. Jagher (*pro hac vice* to be filed)
**FREED KANNER LONDON
    & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Phone: (610) 234-6487
jjagher@fklmlaw.com

Brian M. Hogan
**FREED KANNER LONDON
    & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Phone: (224) 632-4500
bhogan@fklmlaw.com

Katrina Carroll
**CARLSON LYNCH, LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Phone: (312) 750-1265
kcarroll@carlsonlynch.com

*Attorneys for Plaintiffs and the Proposed Class*