## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CAROLYN BRIDGES and RAYMOND CUNNINGHAM, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>BLACKSTONE INC. (fka The Blackstone Group Inc.), a Delaware corporation,<br><br>    Defendant. | Case No. 3:21-cv-01091-NJR |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Carolyn Bridges and Raymond Cunningham (collectively, "Plaintiffs"), both individually and on behalf of all other persons similarly situated, by their undersigned attorneys, as and for their First Amended Class Action Complaint for violations of the Illinois Genetic Information Privacy Act ("GIPA"), 410 ILCS 513/1, *et seq*., against Defendant Blackstone Inc. (fka The Blackstone Group Inc). ("Blackstone" or "Defendant"), allege on personal knowledge, due investigation of their counsel, and, where indicated, on information and belief as follows:

## NATURE OF THE ACTION

1.     Plaintiffs bring this action for damages and other legal and equitable remedies resulting from the illegal transfer of Illinois residents' genetic testing and information derived from genetic testing from Ancestry.com LLC ("Ancestry") to Blackstone. This transfer of highly sensitive genetic information to an unauthorized third-party without obtaining informed written consent was in direct violation of GIPA.

1

2.      Founded in 1996, Ancestry is a global leader in family history and consumer genomics operating in more than 30 countries with a collection of 27 billion records and over 18 million people in its DNA network.

3.      AncestryDNA, a subsidiary unit of Ancestry, offers a direct-to-consumer genealogical DNA test. These at-home kits allow consumers to provide a saliva sample of their DNA to the company for analysis. According to Ancestry, it then uses the saliva sample to form DNA sequences to "provide[] a more complete genetic picture" and "ethnicity estimate." Customers may also infer family relationships with other Ancestry users.

4.      In December 2020, Defendant Blackstone, one of the world's largest investment firms, made a dramatic entry into the genomics space by acquiring Ancestry in a deal valued at $4.7 billion. As part of this acquisition, one of the largest private equity companies in the world, without the written consent or knowledge of any Ancestry customer, compelled the disclosure of the largest trove of DNA data assembled by any consumer gene tester.

5.      After the Ancestry acquisition was initially announced in August 2020, Blackstone disclosed in a U.S. Securities and Exchange Commission filing that it will package and sell data from the companies it acquires for revenue.

6.      In recognition of concerns over the security of individuals' genetic materials, the Illinois Legislature enacted GIPA, which provides, *inter alia*, that "genetic testing and information derived from genetic testimony is confidential and privileged and may be released only to the individual tested and to persons specifically authorized, in writing . . ., by that individual to receive the information."  *See* 410 ILCS 513/15(a).

7.      The Illinois Legislature has recognized that despite existing laws, "many members of the public are deterred from seeking genetic testing because of fear that test results will be

disclosed without consent in a manner not permitted by law or will be used in a discriminatory manner." 410 ILCS 513/5(2).

8.      Moreover, the GIPA further requires that persons or entities may not disclose or be compelled to disclose the identify of any person upon whom a genetic test is performed or the results of a genetic test in a manner that identifies the subject of the test without legal authorization. *See* 410 ILCS 513/30(a).

9.      GIPA confers on Plaintiffs and all other similarly situated Illinois residents a right to prevent such illegal transfer and disclosures of genetic information without their written consent.

10.      Yet, through the acquisition of Ancestry, Defendant compelled the disclosure of genetic testing or information derived from genetic testing of Plaintiffs and thousands of Illinois residents without ever obtaining the requisite written consent, in direct violation of the foregoing provisions of 410 ILCS 513/1, *et seq.*

11.      Plaintiffs bring this action to prevent Defendant from further violating the privacy rights of Illinois residents and to recover statutory damages for Defendant's conduct in violating Plaintiffs' genetic privacy rights.

**JURISDICTION AND VENUE**

12.      This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.*, because this case is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative Class members; at least one putative Class member is a citizen of a state other than Defendant's state of citizenship; and none of the exceptions under subsection 1332(d) apply to the instant action.

13.      This Court may asset personal jurisdiction over Defendant because it conducts

substantial business within Illinois and in this District.

14.     Venue is proper in this District because Plaintiff Carolyn Bridges resides in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

15.     Plaintiff Carolyn Bridges is, and has at all relevant times, been a resident and a citizen of St. Clair County, Illinois.

16.     Plaintiff Raymond Cunningham is, and has at all relevant times, been a resident and a citizen of Champaign County, Illinois.

17.     Defendant Blackstone Inc. is an investment management company headquartered in New York, New York.  It is incorporated in the state of Delaware. On August 5, 2020, Blackstone announced it had reached a definitive agreement to acquire Ancestry for $4.7 billion. On December 4, 2020, Blackstone announced that it had completed the previously announced acquisition.

## FACTUAL BACKGROUND

**I.     Illinois' Genetic Information Privacy Act**

18.     In 2008, Illinois enacted GIPA because "[t]he public health will be served by facilitating voluntary and confidential nondiscriminatory use of genetic testing information." 410 ILCS 513/5(3).

19.     The Illinois General Assembly cautioned, however, that "a key component of health information privacy" is "[l]imiting the use or disclosure of, and requests for, protected health information to the minimum necessary to accomplish an intended purpose." 410 ILCS 513/5(5).

20.     GIPA defines "genetic information" as information pertaining to: (i) the individual's genetic tests; (ii) the genetic tests of family members of the individual; (iii) the manifestation of a

disease or disorder in family members of such individual; or (iv) any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual.[1]

21.    GIPA provides that genetic testing and information derived from genetic testing is "confidential and privileged and may be released only to the individual tested and to persons specifically authorized." 410 ILCS 513/15(a).

22.    Persons, such as Defendant, may not compel the disclosure of genetic testing and information derived from genetic testing unless specifically authorized in writing by the individual whose personal genetic information is being disclosed. *See* 410 ILCS 513/15(a), 410 ILCS 513/30(a).

23.    In 2018, Illinois legislators amended GIPA to update the definition of "genetic testing" to include "direct-to consumer commercial genetic testing" companies. *See* 410 ILCS 513(10).

24.    As alleged herein, the illegal transfer of thousands of Illinois residents' genetic information from Ancestry to Blackstone without informed written consent violated 410 ILCS 513/15(a), 410 ILCS 513/30(a), and 410 ILCS 513/35 of GIPA.

**II.    The Illegal Transfer of Genetic Information From Ancestry to Blackstone**

25.    Founded in 1996, Ancestry is a global leader in family history and consumer genomics operating in more than 30 countries with a collection of 27 billion records and over 18 million people in its DNA network.[2]

---

[1] GIPA incorporates several terms and concepts from the Privacy Rule under the Health Insurance Portability and Accountability Act (the "HIPAA"). This includes the definition of the term "genetic information" which is defined under HIPAA Reg. 45 CFR 160.103.

[2] *See* https://www.blackstone.com/press-releases/article/blackstone-completes-acquisition-of-ancestry-leading-online-family-history-business-for-4-7-billion/ (last accessed July 21, 2021).

26.     Its massive trove of DNA data is procured through AncestryDNA®, part of the Ancestry family of companies, which provides a DNA testing service to customers. Specifically, customers receive at-home kits that allow submission of saliva samples. AncestryDNA® then uses a microarray-based autosomal DNA testing to survey a person's entire genome.[3]

27.     Defendant Blackstone, considered one of the most dominant private equity companies in the world, boasts half a trillion dollars in assets under management. On August 5, 2020, Blackstone made a dramatic entry into the genomics space when announced it had reached a definitive agreement to acquire Ancestry, a global leader in family history and consumer genomics, for $4.7 billion.[4] In announcing the deal, a senior managing director at Blackstone said he foresees Ancestry growing by "investing behind further data, functionality, and product development."[5] On December 4, 2020, Blackstone announced that it had completed its acquisition of Ancestry.[6]

28.     While completing the acquisition of Ancestry, Blackstone disclosed in regulatory filings that agreements to share information between its affiliated entities have already been implemented and that its effort to package and sell data to unaffiliated third-parties is underway.[7]

---

[3] *See* https://www.ancestry.com/dna/en/legal/us/faq#about-1 (last accessed July 21, 2021).

[4] *See* https://www.blackstone.com/press-releases/article/blackstone-to-acquire-ancestry-leading-online-family-history-business-for-4-7-billion/ (last accessed July 21, 2021).

[5] *Id*.

[6] *See* https://www.blackstone.com/press-releases/article/blackstone-completes-acquisition-of-ancestry-leading-online-family-history-business-for-4-7-billion/ (last accessed July 21, 2021).

[7] *See* https://www.bloomberg.com/news/articles/2020-12-15/blackstone-s-next-product-could-be-data-from-companies-it-buys (last accessed July 21, 2021).

29.     Following Defendant's acquisition of Ancestry, Defendant disclosed on the Ancestry website that customer's genetic information would be released and/or disclosed to Defendant for its own use.[8]

30.     Defendant's acquisition of individual's genetic information is also paired with their personal information, including first and last name, email address, home address, and other information.

31.     In direct violation of GIPA, Blackstone compelled the disclosure of highly sensitive genetic information provided by individuals to Ancestry through its acquisition. This highly sensitive genetic information is now in the possession of Blackstone – all without ever informing anyone of this practice in writing.

### III.     Plaintiffs' Experiences with Ancestry

32.     Plaintiff Carolyn Bridges purchased an at-home DNA kit from Ancestry in or around February 2017.

33.     After Plaintiff Bridges sent her saliva sample to Ancestry, her genetic material was sequenced by Ancestry. Ancestry then provided her with information derived from her genetic test, including information about her ethnic and national heritage through an ethnicity estimate.

34.     Plaintiff Raymond Cunningham submitted DNA test results to Ancestry for both himself and his wife on or about November 17, 2018.

35.      After Plaintiff Cunningham sent his sample to Ancestry, his genetic material was sequenced by Ancestry.

---

[8] *See* https://www.ancestry.com/cs/legal/privacystatement (last accessed July 21, 2021).

36.     Plaintiffs never consented, agreed or gave permission–written or otherwise–to Ancestry to transfer their genetic testing and information derived from genetic testing to a third-party.

37.     Further, Defendant never provided Plaintiffs with, nor did they ever sign a written release, allowing Defendant to take possession of their unique genetic testing and information derived from genetic testing.

38.     Plaintiffs never would have provided their genetic information to Ancestry if they had known Blackstone would compel disclosure and take possession of it without their consent.

39.     By compelling disclosure of Plaintiffs' highly sensitive genetic testing and information derived from genetic testing, without their consent, written or otherwise, Defendant invaded Plaintiffs' statutorily protected right to privacy, in direct violation of GIPA.

## CLASS ALLEGATIONS

40.     Plaintiffs bring this action on behalf of themselves and all others similarly situated as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rule of Civil Procedure, on behalf of the following class (the "Class"):

> All individuals who, while residing in the State of Illinois, had their genetic testing and information derived from genetic testing obtained by Defendant.

41.     Excluded from the Class are Defendant, their past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns and any entity in which any of them have a controlling interest, as well as all judicial officers assigned to this case as defined in 28 USC § 455(b) and their immediate families.

42.     Numerosity. Members of the Class are so numerous and geographically dispersed that joinder of all members of the Class is impracticable. Plaintiffs believe that there are thousands of members of the Class. It is, therefore, impractical to join each member of the Class as a named

Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of the litigation. Moreover, the Class is ascertainable and identifiable from Defendant's records.

43.     <u>Typicality</u>. Plaintiffs' claims are typical of the claims of members of the Class. Plaintiffs and members of the Class were harmed by the same wrongful conduct by Defendant in that Defendant compelled their genetic testing and information derived from genetic testing to be disclosed from Ancestry.com to it without obtaining express written consent. Their claims are based on the same legal theories as the claims of other Class members.

44.     <u>Adequacy</u>. Plaintiffs will fairly and adequately protect and represent the interests of the members of the Class. Plaintiffs' interests are coincident with, and not antagonistic to, those of the members of the Class. Plaintiffs have raised viable statutory claims or the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims.  Plaintiffs are represented by counsel with experience in the prosecution of class action litigation generally and in the emerging field of privacy litigation specifically.

45.     <u>Commonality</u>. Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct.  Questions of law and fact common to the Class include:

> (a) whether Defendant compelled disclosure of Plaintiffs' and the Class' genetic testing and information derived from genetic testing;
>
> (b) whether Defendant's conduct is subject to GIPA;

(c) whether Defendant properly informed Plaintiff and the Class that it obtained their genetic testing and information derived from genetic testing;

(d) whether Defendant obtained a written release (as defined in 410 ILCS 513/15) to obtain Plaintiffs' and the Class' genetic testing and information derived from genetic testing;

(e) whether Defendant's violations of GIPA were committed intentionally, recklessly, or negligently; and

(f) whether Plaintiff and the Class are entitled to damages and/or other equitable relief.

46.     <u>Superiority</u>. Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action.  Plaintiffs know of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action. Class-wide relief is essential to compliance with GIPA.

## **CAUSE OF ACTION**

### **Count I**
### **Violation of the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq*.**
### **(On behalf of Plaintiffs and the Class)**

47.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

48.     GIPA mandates that genetic testing and information derived from genetic testing is confidential and privileged and may be released only to the individual tested and to persons specifically authorized in writing by that individual to receive the information. *See* 410 ILCS 513/15(a).

10

49.     GIPA further mandates that no person may disclose or be compelled to disclose the identify of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test. *See* 410 ILCS 513/30(a).

50.     Both Defendant and Ancestry are private corporations registered to do business in Illinois and thus qualify as "persons" under GIPA. *See* 410 ILCS 513/10.

51.     Defendant failed to comply with this GIPA mandate.

52.     Plaintiffs and the Class are individuals who provided their genetic testing and information derived from genetic testing to Ancestry. Defendant Blackstone, through its acquisition of Ancestry, compelled disclosure and obtained Plaintiffs' and Class members' genetic testing and information derived from genetic testing, as explained in detail in above. *See* 410 ILCS 513/30.

53.     Defendant failed to obtain written authorization from Plaintiffs or Class members to obtain their genetic testing and information derived from genetic testing, as required by 410 ILCS 513/15(a), 410 ILCS 513/30(a) and 410 ILCS 513/35.

54.     Defendant's violations of GIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with GIPA.

55.     On behalf of themselves and the Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with GIPA's requirements; (2) statutory damages of $15,000 for each intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(a)(2) or, in the alternative, statutory damages of $2,500 for each negligent violation of GIPA pursuant to 410 ILCS 513/40(a)(1); and

(3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 410 ILCS 513/40(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Carolyn Bridges and Raymond Cunningham, on behalf of themselves and the proposed Class, respectfully requests that this Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs as representatives of the Class, and appointing their counsel as Class Counsel;

B.     Declaring that Defendant's actions, as set out above, violate GIPA, 410 ILCS 513/1, *et seq.*;

C.     Awarding statutory damages of $15,000.00 for each and every intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513(40)(a)(2), or alternatively, statutory damages of $2,500.00 for each and every violation pursuant to 410 ILCS 513(40)(a)(1) if the Court finds that Defendant's violations were negligent;

D.     Awarding injunctive and other equitable relief as is necessary pursuant to 410 ILCS 513(40)(a)(4) to protect the interests of the Class;

E.     Awarding Plaintiffs and the Class their reasonable attorneys' fees and costs and other litigation expenses, pursuant to 410 ILCS 513/40(a)(3);

F.     Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

G.     Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Dated: October 26, 2021

Respectfully submitted,

*/s/ Gregory L. Shevlin*
Gregory L. Shevlin, IL #6199414
**COOK, BARTHOLOMEW, SHEVLIN,**
**    COOK & JONES, LLP**
12 West Lincoln St.
Belleville, IL 62220
Phone (618) 235-3500
gls@cbsclaw.com

Gary M. Klinger
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Phone: 202.429.2290
gklinger@masonllp.com

Jonathan M. Jagher
**FREED KANNER LONDON**
**    & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Phone: (610) 234-6487
jjagher@fklmlaw.com

Brian M. Hogan
**FREED KANNER LONDON**
**    & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Phone: (224) 632-4500
bhogan@fklmlaw.com

Katrina Carroll
**CARLSON LYNCH, LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Phone: (312) 750-1265
kcarroll@carlsonlynch.com

*Attorneys for Plaintiffs and the*
*Proposed Class*