## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

CAROLYN BRIDGES, and RAYMOND
CUNNINGHAM, individually and on behalf
of all others similarly situated,

           Plaintiffs,

v.

BLACKSTONE INC. (fka The Blackstone
Group Inc.), a Delaware corporation,

           Defendant.

Case No. 3:21-cv-01091-NJR

## DEFENDANT BLACKSTONE'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT[1]

---

[1] Pursuant to S.D. Ill. Local Rule 7.1(c), a motion to dismiss and supporting brief may be combined into a single submission.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ....................................................................................................1

BACKGROUND .....................................................................................................2

     A.    Statutory Background ...........................................................................2

     B.    Plaintiffs' Allegations .........................................................................3

LEGAL STANDARD..............................................................................................4

ARGUMENT ..........................................................................................................5

I.      PLAINTIFFS HAVE NOT SUFFICIENTLY PLED A VIOLATION OF GIPA..............5

     A.    GIPA Does Not Prohibit "Obtaining" Genetic Information. ..................................5

     B.    GIPA Does Not Prohibit "Compelling" Disclosure Of Genetic Information, Nor Do Plaintiffs Adequately Allege That Blackstone Did So. ..............................9

     C.    Plaintiffs Do Not Allege Any Improper Disclosure By Blackstone.....................11

II.     PLAINTIFFS CANNOT APPLY GIPA EXTRATERRITORIALLY.............................13

CONCLUSION.......................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Adams v. City of Indianapolis*,
    742 F.3d 720 (7th Cir. 2014) ................................................................................4, 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................4, 5, 11

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    835 N.E.2d 801 (Ill. 2005)........................................................................2, 13, 14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................... *passim*

*Bissessur v. Ind. Univ. Bd. of Trs.*,
    581 F.3d 599 (7th Cir. 2009) ........................................................................5

*Clay v. Little Co. of Mary Hosp.*,
    277 Ill. App. 3d 175 (Ill. App. Ct. 1995) ..................................................8

*Corwin v. Conn. Valley Arms, Inc.*,
    74 F. Supp. 3d 883 (N.D. Ill. 2014) .........................................................13

*Epstein v. Epstein*,
    843 F.3d 1147 (7th Cir. 2016) ...................................................................8

*Forrest v. Universal Sav. Bank, F.A.*,
    507 F.3d 540 (7th Cir. 2007) .....................................................................12

*Hill v. Shobe*,
    93 F.3d 418 (7th Cir. 1996) .......................................................................13

*Int'l Equip. Trading, Ltd. v. Illumina, Inc.*,
    312 F. Supp. 3d 725 (N.D. Ill. 2018) .......................................................15

*Kleber v. CareFusion Corp.*,
    914 F.3d 480 (7th Cir. 2019) .................................................................9, 10

*Landau v. CNA Fin. Corp.*,
    886 N.E.2d 405 (Ill. App. 2008) ...............................................................14

*Landis v. Marc Realty, L.L.C.*,
    235 Ill. 2d 1 (Ill. 2009)................................................................................6

*Monroy v. Shutterfly, Inc.*,
 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ........................................................13

*Estate of Moreland v. Dieter*,
 576 F.3d 691 (7th Cir. 2009) ...............................................................................7

*Newsom v. Friedman*,
 1995 WL 76869 (N.D. Ill. Feb. 17, 1995) .............................................................6

*Phillips v. Prudential Ins. Co. of Am.*,
 714 F.3d 1017 (7th Cir. 2013) ............................................................................12

*Refined Metals Corp. v. NL Indus. Inc.*,
 937 F.3d 928 (7th Cir. 2019) ...............................................................................7

*Rivera v. Google Inc.*,
 238 F. Supp. 3d 1088 (N.D. Ill. 2017) ................................................................13

*Rogers v. CSX Intermodal Terminals, Inc.*,
 409 F. Supp. 3d 612 (N.D. Ill. 2019) ..................................................................13

*Rossy v. Merge Healthcare Inc.*,
 169 F. Supp. 3d 774 (N.D. Ill. 2015) ..................................................................14

*Schalk v. Reilly*,
 900 F.2d 1091 (7th Cir. 1990) .............................................................................8

*Sekura v. Krishna Schaumberg Tan, Inc.*,
 2017 WL 1181420 (Ill. Cir. Ct. Feb. 09, 2017) ...................................................7

*Sekura v. Krishna Schaumburg Tan, Inc.*,
 2018 IL App (1st) 180175 (Ill. App. Ct. Sept. 28, 2018).....................................7

*Sharbaugh v. First Am. Title Ins. Co.*,
 2007 WL 3307019 (N.D. Ill. Nov. 2, 2007) .......................................................14

*Swanson v. Citibank, N.A.*,
 614 F.3d 400 (7th Cir. 2010) .............................................................................13

*U.S. Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*,
 390 F. Supp. 3d 892 (N.D. Ill. 2019) ..................................................................14

*Vulcan Golf, LLC v. Google Inc.*,
 552 F. Supp. 2d 752 (N.D. Ill. 2008) ..................................................................15

*W. Bend Mut. Ins. Co. v. Schumacher*,
 844 F.3d 670 (7th Cir. 2016) .............................................................................12

*U.S. ex rel. Walner v. NorthShore Univ. Healthsystem*,
    660 F. Supp. 2d 891 (N.D. Ill. 2009) ....................................................................13

*West v. Louisville Gas & Elec. Co.*,
    2018 WL 321686 (S.D. Ind. Jan. 8, 2018), *aff'd,* 951 F.3d 827 (7th Cir. 2020) ......................8

**Statutes**

Illinois Biometric Privacy Act, 740 ILCS 14/15 .......................................................7, 13

Illinois Genetic Information Privacy Act, 410 ILCS 513 ..................................... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................1, 4, 15

**Other Authorities**

*Black's Law Dictionary* (11th ed. 2019)...................................................................10

## <u>INTRODUCTION</u>

Plaintiffs' lawsuit continues to advance an ambitious legal theory: an entity violates the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq.* ("GIPA") by acquiring a business that lawfully obtains genetic information from consenting consumers.  Even after amending the complaint, Plaintiffs' core claim remains the same—through the acquisition of Ancestry.com DNA, LLC ("Ancestry"), Blackstone Inc. ("Blackstone") somehow took possession of consumers' genetic information in violation of GIPA.  Plaintiffs attempt to scrub their complaint of its previous references to Blackstone "acquiring" their data and instead dress up their claim with additional baseless allegations that Blackstone somehow "compelled" Ancestry to "transfer" their information.  But semantics cannot save their claim.  Even if Plaintiffs could support this allegation (and they cannot), it is still predicated on Blackstone allegedly "obtaining" their information (whether by "acquisition," "compulsion," or otherwise).  First Am. Compl. ("FAC") ¶ 52.  As a result, Plaintiffs' suit advances the same flawed claim: it attempts to assign liability under GIPA to a purported *recipient* of lawfully obtained genetic information.  This stretches the statute well past its written or intended scope.  The Court should dismiss Plaintiffs' amended complaint under Rule 12(b)(6).

*First*, Plaintiffs have failed to plead a statutory violation of GIPA.  By its plain language, the Act prohibits the disclosure or release of genetic information, not (as Plaintiffs contend) the acquisition, receipt, or possession of such information.  To hold a defendant liable for allegedly acquiring or obtaining genetic information, through a normal course M&A transaction no less, would conflict with GIPA's plain language and meaning.  Moreover, holding an entity liable based on its acquisition of a genetic testing company would chill investments in such companies and defeat GIPA's stated purpose of promoting the availability and use of genetic tests.

The same is true for Plaintiffs' allegation that Blackstone somehow "compelled" Ancestry to disclose their genetic data.  To impose liability for the alleged "compulsion" of genetic data still assigns liability for receiving such information and requires an impermissibly strained (and wrong) reading of GIPA.  But, even if "compelling" disclosure was prohibited under GIPA (and it is not), Plaintiffs' allegations still fail to state a claim because they amount to nothing more than conclusory statements that fail to even suggest actual "compulsion."   Nor have Plaintiffs sufficiently alleged that Blackstone disclosed or used (let alone actually possessed) any genetic testing results (nor can they).

*Second*, and independently, because GIPA does not apply extraterritorially, Plaintiffs cannot state any claim under the Act where, as here, they do not allege that Blackstone's purported statutory violations occurred "primarily and substantially" in Illinois.  *See, e.g.*, *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 854 (Ill. 2005).

## BACKGROUND

### A.    Statutory Background

The Illinois Legislature originally passed GIPA in 1998 to balance the well-recognized "valu[e]" of genetic testing with the "fear that test results will be disclosed without consent." 410 ILCS 513/5(2).[2]  GIPA was enacted to address Illinoisans' concern that if test results were not confidential, "[a]n employer or an insurance carrier [could] obtain that information … and could discriminate on employment or price or coverage."[3]  Recognizing the "achievement[s]" of genetic testing and intending "for people to be encouraged to receive DNA tests,"[4] the Act was passed to

---

[2] Of note, despite the fact that GIPA has been in existence for over two decades, Defendant is aware of only a small handful of suits (all filed within the last year) based on purported violations of this statute.

[3] Ex. 1, Ill. House of Rep., 90th Gen. Assemb. at 183 (April 15, 1997) (statement of Rep. Moffitt).

[4] *Id*. at 191, 194 (statements of Reps. Brady, Schakowsky).

serve public health by "facilitating voluntary and confidential nondiscriminatory use of genetic testing."  FAC ¶ 18.

The statute recognizes the confidential nature of genetic testing information and prohibits the "release[]" of such information to unauthorized individuals. 410 ILCS 513/15(a).  In addition, it prohibits any individual or entity from "disclos[ing] or be[ing] compelled to disclose the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test."  410 ILCS 513/30.  In line with its purpose and intent, the statute explicitly restricts the use of genetic testing information by employers and insurers; other sections make special exceptions allowing for the use of such material for health care operations, paternity testing, criminal investigations, and other legal proceedings.  *See, e.g.* 410 ILCS 513/15(b), 20, 22, 25, 31.  Critically, GIPA does not regulate the mere possession or acquisition of genetic data—even if obtained by "compulsion."

### B.      Plaintiffs' Allegations

As Plaintiffs allege, Ancestry is a "global leader in family history and consumer genomics." FAC ¶ 25.  As part of these services, Ancestry markets and sells at-home DNA test kits.  *Id*. ¶ 26. Through these at-home kits, consumers simply provide a sample of their saliva (containing their DNA) and ship the test kit back to Ancestry; Ancestry next "sequences" the genetic material to provide consumers with "'a more complete genetic picture' and 'ethnicity estimate,'" as well as information about potential familial relationships.  *Id*. ¶ 3.  Plaintiff Carolyn Bridges is one such consumer who allegedly "purchased an at-home DNA kit from Ancestry" in or around February 2017.  *Id*. ¶ 32.  As she puts it, she "sent her saliva sample to Ancestry," and Ancestry provided her with "information about her ethnic and national heritage through an ethnicity estimate."  *Id*. ¶ 33.  Plaintiff Raymond Cunningham likewise alleges that he "submitted DNA test results to

3

Ancestry for both himself and his wife on or about November 17, 2018," and that his genetic material was subsequently sequenced by Ancestry. *Id.* ¶¶ 34, 35.

In late 2020, funds managed by Blackstone acquired Ancestry. Blackstone "is one of the world's leading investment firms" which "seek[s] to create positive economic impact and long-term value for [its] investors, the companies [it] invest[s] in, and the communities in which [it] work[s]."[5]

Plaintiffs assert one cause of action, alleging that Blackstone has violated GIPA. FAC ¶¶ 47-55. Despite its length, the bulk of Plaintiffs' amended complaint essentially boils down to a single allegation: "Defendant Blackstone, through its acquisition of Ancestry, compelled disclosure and obtained Plaintiffs' and Class members' genetic testing and information derived from genetic testing" without their written consent. *Id.* ¶¶ 52, 53; *see also id.* ¶¶ 4, 10, 31, 38, 39. Plaintiffs allege that this resulted in Blackstone violating GIPA. Plaintiffs purport to represent a class of "[a]ll individuals who, while residing in the State of Illinois, had their genetic testing and information derived from genetic testing obtained by Defendant." *Id.* ¶ 40.

## **LEGAL STANDARD**

Rule 12(b)(6) requires dismissal when a complaint lacks allegations of fact that, if true, would enable the court to infer a defendant is liable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

---

[5] Ex. 2, https://www.blackstone.com/press-releases/article/blackstone-to-acquire-ancestry-leading-online-family-history-business-for-4-7-billion/, cited in FAC ¶ 27 (last visited 11/9/2021). Courts may take judicial notice of the full contents of materials cited in a complaint. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007) (holding court "was entitled to take notice of the full contents of the published articles referenced in the complaint, from which the truncated quotations were drawn"); *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (holding court could consider materials cited in complaint, and plaintiffs' argument to the contrary was "frivolous").

This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," or "naked assertion[s]" devoid of "further factual enhancement." *Id.* (citing *Twombly*, 550 U.S. at 555-57). Instead, "a plaintiff has the obligation to provide the factual 'grounds' of his entitlement to relief (more than 'mere labels and conclusions'), and a 'formulaic recitation of a cause of action's elements will not do.'" *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Twombly*, 550 U.S. at 547).

When ruling on a 12(b)(6) motion, a court should disregard allegations in the form of legal conclusions. *Iqbal*, 556 U.S. at 678; *Adams*, 742 F.3d at 728. In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Where, as here, the complaint lacks non-conclusory facts from which a court could infer an entitlement to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal citations omitted).

## ARGUMENT

### I.    PLAINTIFFS HAVE NOT SUFFICIENTLY PLED A VIOLATION OF GIPA.

To state a claim under GIPA, Plaintiffs must allege that Blackstone either: (1) "released" their "genetic testing [or] information derived from genetic testing" to unauthorized persons, *see* 410 ILCS 513/15(a); or (2) "disclose[d] or [was] compelled to disclose the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test" to unauthorized persons, *see* 410 ILCS 513/30(a). Plaintiffs fail to allege either (nor could they).

#### A.    GIPA Does Not Prohibit "Obtaining" Genetic Information.

Recognizing the vulnerability of their claim based solely on Blackstone acquiring Ancestry in an M&A transaction, Plaintiffs attempt to delete most references to "acquiring" and instead

allege that Blackstone violated GIPA when it purportedly "obtained" and "came into possession" of their genetic information by purchasing Ancestry.  *See, e.g.*, FAC ¶ 38 ("Plaintiffs never would have provided their genetic information to Ancestry if they had known Blackstone would compel disclosure and take possession of it without their consent."); *id.* ¶ 53 ("Defendant failed to obtain written authorization from Plaintiffs or Class members to obtain their genetic testing and information derived from genetic testing."); *see also id.* ¶¶ 31, 37, 40, 45, 52.  Not only is such a linguistic shift insignificant given that Plaintiffs allege that Blackstone "obtained" or "took possession" of the data *only* through the acquisition (which it did not), but even if Plaintiffs' allegations are taken as true, they still fail to state a claim under GIPA.

In Illinois, "[t]he fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature."  *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 6 (Ill. 2009).  "The best indicator of the legislature's intent is the language in the statute, which must be accorded its plain and ordinary meaning."  *Id*.  "When the statute's language is clear, the text controls."  *Newsom v. Friedman*, 1995 WL 76869, at *2 (N.D. Ill. Feb. 17, 1995).  Here, the express language of GIPA is clear.  It restricts only the *disclosure* or *release* of information to unauthorized persons.  *See* 410 ILCS 513/15(a) and 410 ILCS 513/30(a).

Contrary to Plaintiffs' assertion that "obtain[ing] . . . genetic testing and information" is a violation of GIPA, FAC ¶ 52, no provision of GIPA prohibits *obtaining* or *coming into possession* of genetic information.  In fact, GIPA expressly addresses persons who *do* obtain or come to possess protected information, and provides that such persons "to whom the results of a test have been disclosed" may not "disclose the test results to another person except as authorized under this Act."  410 ILCS 513/35.  Thus, the plain language of the statute indicates the legislature clearly

contemplated that entities may (one way or another) acquire genetic testing information and intended to prohibit only further ***disclosure*** of information, not acquiring or obtaining it.

This is further confirmed by comparing GIPA to a similar Illinois privacy statute, the Illinois Biometric Privacy Act ("BIPA").  Unlike GIPA, BIPA ***does*** restrict "obtaining" certain information.  Specifically, Section 15(b) of BIPA states "[n]o private entity may collect, capture, purchase, receive through trade, or ***otherwise obtain***" biometric data without informed written consent.  740 ILCS 14/15(b) (emphasis added).  As Illinois courts have noted, BIPA and GIPA are "similar statutes" which were "considered and amended during the same legislative session." *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175, ¶ 17 (Ill. App. Ct. Sept. 28, 2018) (quoting *Sekura v. Krishna Schaumberg Tan, Inc*., 2017 WL 1181420, at *2 (Ill. Cir. Ct. Feb. 09, 2017)).  Thus, clearly, the Illinois legislature "knows how to [restrict 'obtaining' data] when it wants to do so."  *Estate of Moreland v. Dieter*, 576 F.3d 691, 700 (7th Cir. 2009).  *See also Refined Metals Corp. v. NL Indus. Inc.*, 937 F.3d 928, 932 (7th Cir. 2019) ("[W]here Congress includes particular language in one section of a statute but omits it in another … , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal citation omitted).  Thus, it should be presumed that the Illinois legislature "act[ed] intentionally and purposely" in its decision to restrict acquiring or obtaining data in BIPA, and to exclude such a provision in GIPA.

Further, Plaintiffs' ambitious and novel legal theory, if accepted, would undermine the express purpose of GIPA: to "facilitat[e] voluntary and confidential nondiscriminatory use of genetic testing information."  410 ILCS 513/5(3).  Indeed, during the floor debate, Illinois Representatives recognized that genetic testing "is a blessing, . . . an achievement . . . a thing to

rejoice over."[6]  Thus, the statute was aimed at "encourag[ing]" people "to receive DNA tests," without fear that their employer or insurer would discriminate against them based on the results.[7] Applying GIPA to an entity (notably, not an employer or insurer) that merely invested in a company that makes genetic testing available to the masses—as Plaintiffs seek to do—would directly contravene the legislature's clear intent and the express purpose of the Act.  Worse, such an application (or misapplication) of the statute could have a chilling effect on future investments in the "achievement" and advancements of genetic testing, limiting the availability of genetic testing for Illinois citizens.  Such a sweeping and unfounded application of GIPA should not be permitted.  *See, e.g.*, *Schalk v. Reilly*, 900 F.2d 1091, 1096 (7th Cir. 1990) (affirming dismissal in part because legislative history of statute at issue supported defendant's interpretation); *West v. Louisville Gas & Elec. Co.*, 2018 WL 321686, at *4 (S.D. Ind. Jan. 8, 2018) (granting defendant's motion to dismiss because defendant's interpretation of the relevant statute "better comport[ed] with Congress' intent" and the legislative history), *aff'd,* 951 F.3d 827 (7th Cir. 2020).

In short, Plaintiffs' allegations that Blackstone "obtained" genetic information cannot possibly state a claim because, setting aside the fact that such conduct did not actually occur, it is not prohibited by the text or purpose of GIPA.  *See, e.g.*, *Epstein v. Epstein*, 843 F.3d 1147, 1152 (7th Cir. 2016) (affirming in part dismissal of claim where plaintiff merely alleged defendant "intended to use" information but relevant statute "does not prohibit inchoate intent"); *Clay v. Little Co. of Mary Hosp.*, 277 Ill. App. 3d 175 (Ill. App. Ct. 1995) (affirming dismissal of complaint where plaintiff alleged defendant hospital failed to permit plaintiffs to personally copy their records because statute did not require that).

---

[6] Ex. 1, Excerpt from Ill. House of Rep., 90th Gen. Assemb. at 194 (April 15, 1997) (statement of Rep. Schakowsky).

[7] *Id*. at 191 (statement of Rep. Brady).

**B.      GIPA Does Not Prohibit "Compelling" Disclosure Of Genetic Information, Nor Do Plaintiffs Adequately Allege That Blackstone Did So.**

In addition to their conclusory allegations that Blackstone "obtained" genetic data, Plaintiffs also allege that Blackstone somehow "compelled the disclosure" of that same data from Ancestry. *See* FAC ¶¶ 4, 10, 31, 38, 39, 52.   But these unsupported assertions do not save their claim.

*First*, as noted above, GIPA does not regulate "obtaining" data, regardless of ***how*** the data was obtained (*i.e.*, even if it was "compelled").   Plaintiffs simply get it wrong.   They advance a confused and incorrect interpretation of Section 30(a), claiming it means that "[p]ersons, such as Defendant, may not compel the disclosure of genetic testing and information derived from genetic testing unless specifically authorized in writing by the individual whose personal genetic information is being disclosed."   FAC ¶ 22.

Contrary to Plaintiffs' confused and illogical reading, the plain text of the statute actually prohibits only the ***disclosure*** of genetic data, even when compelled:   "***No person may disclose or be compelled to disclose*** the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test."   410 ILCS 513/30(a) (emphasis added); *see also* FAC ¶¶ 8, 49 (citing 410 ILCS 513/30(a)).   The plain language of this provision, which uses passive voice, is directed at the disclosing "person"—*i.e.*, the supplier of the genetic testing information.   In other words, the clear language of Section 30(a), directs both "disclose" and "be[ing] compelled to disclose" to the same "person" and therefore makes clear that, under GIPA, "being compelled" is not a defense to a person's wrongful disclosure of genetic information.   The plain language of the statute makes clear that liability is ***not*** predicated on receipt.   *Kleber v. CareFusion Corp.*, 914 F.3d 480, 482 (7th Cir. 2019) ("If the statutory language is plain, we must enforce it according to its terms.") (citation omitted).

9

Plaintiffs' muddled interpretation of Section 30(a) is also irreconcilable with a holistic reading of GIPA, which clearly contemplates receipt of genetic information and prohibits only its *release* or *disclosure*, not obtaining or possessing it.  *See supra* § I(A).  Interpreting this provision to impose liability on a person or entity obtaining genetic data (even through "compulsion") would impermissibly disregard the language and design of the statute as a whole.  *Kleber*, 914 F.3d at 483 ("[T]ime and again the Supreme Court has instructed that statutory interpretation requires reading a text as a whole, and here that requires that we refrain from isolating two words when the language surrounding those two words supplies essential meaning and resolves the question before us.") (citing cases).  Therefore, Blackstone cannot be held liable under this provision of GIPA, even if it did acquire genetic data from Ancestry (which it did not).

*Second*, even if GIPA prohibited the "compulsion" of genetic data (which it does not), Plaintiffs' allegations are plainly insufficient.  Plaintiffs allege—without any factual support— that, "Blackstone compelled the disclosure of highly sensitive genetic information provided by individuals to Ancestry through its acquisition."  FAC ¶ 31; *see also id.* ¶ 38 ("Plaintiffs never would have provided their genetic information to Ancestry if they had known Blackstone would compel disclosure and take possession of it without their consent."); ¶¶ 4, 10, 39, 52.

These allegations are nothing more than "naked assertion[s]" devoid of "further factual enhancement" that do not suffice to state a claim.  *See Twombly*, 550 U.S. at 557.  To "compel," in the legal context, means "[t]o cause or bring about by force, threats, or overwhelming pressure." *Black's Law Dictionary* (11th ed. 2019).  In other words, compulsion necessarily requires something more than mere obtainment.  But Plaintiffs fail to support their allegation that Blackstone "compelled the disclosure" of genetic data with *anything* beyond their claim that Blackstone merely obtained genetic data through its acquisition of Ancestry.  *See, e.g.*, FAC ¶ 10

10

("[T]hrough the acquisition of Ancestry, Defendant compelled the disclosure of genetic testing or information derived from genetic testing of Plaintiffs and thousands of Illinois residents."); *see also id.* ¶¶ 4, 31, 52.  Critically, they fail to include (because they cannot) any factual allegations even suggesting that Blackstone pressured or threatened Ancestry for Plaintiffs' data in any way. Their allegations are nothing more than textbook "[t]hreadbare recitals" which "do not suffice" to state a claim.  *Iqbal*, at 556 U.S. at 678; *see also id.* at 678-79 ("[Rule 8(a)] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  Plaintiffs' speculative leap—from Blackstone's acquisition of Ancestry, to Blackstone's alleged acquisition of genetic data, to Blackstone's alleged compulsion of that data—is simply not enough to avoid dismissal.

### C.   Plaintiffs Do Not Allege Any Improper Disclosure By Blackstone.

Tellingly, Plaintiffs do not plead as part of their single cause of action that Blackstone disclosed or released genetic information in violation of GIPA.  FAC ¶¶ 47-55.  In that section, Plaintiffs confine their allegations to conclusory assertions about "obtain[ing]" and "compel[ling]" information.  *See id.*

Elsewhere, Plaintiffs obliquely suggest (in just two paragraphs) that "[w]hile completing the acquisition of Ancestry, Blackstone disclosed in regulatory filings that agreements to share information between its affiliated entities have already been implemented and that its effort to package and sell data to unaffiliated third-parties is underway."  FAC ¶ 28; *see also id.* ¶ 5. Plaintiffs fail to connect this stray allegation to their claim under GIPA.  Nor could they.  Beyond pointing to Blackstone's regulatory filings that reference general data sharing agreements—which have nothing to do with genetic information (or Ancestry)—their amended complaint provides no support, and actually refutes, the allegation that Blackstone has disclosed any data, let alone genetic data.

11

As a preliminary matter, Plaintiffs do not allege that Blackstone actually obtained Ancestry data and then released it to any third parties. The two stray paragraphs in the amended complaint do not refer to Ancestry data at all, nor do they allege that any data has actually been shared. Plaintiffs essentially allege that Blackstone acquired Ancestry, and thus must have obtained Ancestry's customers' genetic test results. *See, e.g.*, FAC ¶ 52. To then infer from this allegation that such information was (or will be) shared with third parties is an even further assumption requiring speculation, which is not enough to state a claim. *See, e.g.*, *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."); *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 679 (7th Cir. 2016) (affirming dismissal of complaint because it "leaves [the court] to speculate" and failed to "suggest a right to relief that is beyond the speculative level") (internal citations omitted).

Further, Plaintiffs' speculation is actually belied by the very document they cite.[8] In support of their allegation that Blackstone's "effort to package and sell data to unaffiliated third-parties is underway," FAC ¶ 28, Plaintiffs cite an article from Bloomberg. But the article makes no mention of Ancestry or its genetic data.[9] More importantly, the article clearly states that any consideration of selling data (again, not discussing Ancestry data) was merely "exploratory," and that "***nothing has been sold on behalf of our portfolio companies or Blackstone***."[10] Put another

---

[8] When material referenced in the complaint contradicts the complaint's allegations, the exhibit controls. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) ("To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence."); *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007).

[9] *See* Ex. 3, www.bloomberg.com/news/articles/2020-12-15/blackstone-s-next-product-could-be-data-from-companies-it-buys, cited in FAC ¶ 28 (last visited 11/9/2021).

[10] *Id.* (emphasis added).

way, the article unequivocally states that Blackstone has not sold *any* data from *any* of its portfolio companies.  Full stop.

As a result, Plaintiffs' allegation related to—and, in fact, only suggestion of—improper disclosure cannot be taken as true, and fails to state a claim under GIPA. [11]

## II.    PLAINTIFFS CANNOT APPLY GIPA EXTRATERRITORIALLY.

In addition, Plaintiffs' amended complaint should be dismissed in its entirety because it requires application of a state statute, not intended to apply outside of Illinois, to alleged extraterritorial conduct.  The Illinois Supreme Court has repeatedly held that a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute."  *Avery*, 835 N.E.2d at 852 (internal quotation omitted).  None of GIPA's express provisions indicates that the Act was intended to have extraterritorial effect.[12]

---

[11] Even if Plaintiffs had sufficiently alleged disclosure, their claim would fail for another, independent reason. Plaintiffs have not adequately pled that Blackstone acted negligently, recklessly, or intentionally—a necessary element to state a claim for damages under GIPA.  *See* 410 ILCS 513/40 (allowing liquidated or actual damages for negligent, reckless, or intentional conduct).  Their amended complaint includes nothing more than a single, stray paragraph reciting the statutory requirements.  FAC ¶ 54.  This is not enough to plead this necessary element, and, accordingly, Plaintiffs' damages claim cannot survive dismissal.  *See Twombly*, 550 U.S. at 570; *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996) ("A conclusory allegation of recklessness, however, is insufficient to defeat a motion to dismiss."); *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 618–19 (N.D. Ill. 2019) ("[Plaintiff's] conclusory statement of [defendant's] intent is insufficient to allow us to infer that [defendant] acted intentionally or recklessly and does nothing to distinguish this case from every possible BIPA case where the defendant is alleged to have failed to meet the strictures of Section 15.") (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010)); *Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 889 (N.D. Ill. 2014) (dismissing complaint where Plaintiff failed to show "that his negligence claim … is 'plausible, rather than merely speculative'") (citation omitted).  Moreover, the amended complaint also states that Plaintiffs, on their own behalf, and on behalf of the proposed Class, seek "injunctive and equitable relief . . . requiring Defendant to comply with GIPA's requirements."  FAC ¶ 55.  The amended complaint, however, fails to allege an inadequate legal remedy, so Plaintiffs are not entitled to an injunction as a matter of law.  *See U.S. ex rel. Walner v. NorthShore Univ. Healthsystem*, 660 F. Supp. 2d 891, 900 (N.D. Ill. 2009) (dismissing complaint for injunctive relief where plaintiff alleged "no facts supporting his claim for injunctive relief and instead just concludes that injunctive relief is warranted").

[12] Indeed, multiple federal courts have found that BIPA—which, as noted above, was considered and amended during the same legislative session as GIPA and thus presumably was drafted with the same framework in mind—is without extraterritorial effect for this reason.  *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017).

Thus, to be actionable against a foreign company like Blackstone—incorporated in Delaware and headquartered in New York, FAC ¶ 17—Blackstone must have violated GIPA ***within Illinois***.  This means Plaintiffs must show that Blackstone's alleged violations of GIPA "occur[red] ***primarily and substantially***" in Illinois.  *Avery*, 835 N.E.2d at 854 (emphasis added); *see also Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 409 (Ill. App. 2008) (affirming dismissal where "the majority of circumstances relating to the alleged violation of the [statute]" occurred outside the state).

Plaintiffs' amended complaint fails to plead that Blackstone engaged in ***any conduct*** in Illinois.  Indeed, the only connection to Illinois here is the alleged residency of the plaintiffs and the purported class.  FAC ¶¶ 15, 16, 40.  This is not enough.  Plaintiffs' alleged injuries stem not from any action in Illinois, but from Blackstone's acquisition of Ancestry, which they claim resulted in the unauthorized transfer of their genetic data from Ancestry to Blackstone.  Plaintiffs do not allege that the purported transfer of data took place in Illinois.  For good reason:  Ancestry is headquartered in Lehi, Utah[13]—over 1,200 miles west of the Illinois border.  And as noted above, Blackstone's principal office is in New York City.  Plaintiffs have not and cannot allege that ***any*** conduct by Blackstone took place in Illinois.

Without more, Plaintiffs cannot show that Blackstone's purported violations of GIPA occurred anywhere near Illinois, let alone "primarily and substantially" in the state.  Thus, Plaintiffs' claim must be dismissed.  *See, e.g.*, *Landau*, 886 N.E.2d at 409; *U.S. Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 911 (N.D. Ill. 2019)

---

[13] Ex. 4, Ancestry.com LLC, Current Report (Form 8-K) (Oct. 7, 2016) (listing address of principal executive officers in Lehi, Utah).  Courts have concluded that judicial notice may be taken of the contents of public record disclosure documents filed with the SEC if the facts sought to be noticed are not subject to dispute. *See, e.g.*, *Rossy v. Merge Healthcare Inc.*, 169 F. Supp. 3d 774, 777 (N.D. Ill. 2015) ("The following facts are drawn from the allegations in plaintiffs' Consolidated Amended Complaint . . . and, where noted, from other materials properly before me, including Merge's SEC filings."); *Sharbaugh v. First Am. Title Ins. Co.*, 2007 WL 3307019, at *2 (N.D. Ill. Nov. 2, 2007) (taking judicial notice of statements in Form 10–K that were not in dispute).

(dismissing claim for violation of Illinois statute where plaintiff failed to allege conduct that occurred "primarily and substantially in Illinois"); *Int'l Equip. Trading, Ltd. v. Illumina, Inc.*, 312 F. Supp. 3d 725, 733 (N.D. Ill. 2018) (plaintiff's residency in Illinois was insufficient to survive motion to dismiss on extraterritorial application when "allegedly illegal actions of a California-based company impacted potential customers outside of Illinois"); *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (dismissing claim under Illinois statute, even though plaintiffs resided in Illinois, because "plaintiffs point to no allegations that plausibly suggest that the purported deceptive [conduct] occurred primarily and substantially in Illinois").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' amended complaint should be dismissed with prejudice in its entirety under Rule 12(b)(6) because Plaintiffs have not—and cannot—allege any viable claim against Blackstone.

Dated: November 9, 2021                                     Respectfully submitted,

By:   */s/ Martin L. Roth*
          Martin L. Roth
          Alyssa C. Kalisky
          Amelia H. Bailey
          KIRKLAND & ELLIS LLP
          300 North LaSalle
          Chicago, IL 60654
          (312) 862-2000
          (312) 862-2200
          martin.roth@kirkland.com
          alyssa.kalisky@kirkland.com
          amelia.bailey@kirkland.com

          *Counsel for Blackstone Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 9, 2021, I electronically filed the foregoing document and any attachments with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.


<u>/s/ *Martin L. Roth*    </u>
Martin L. Roth