**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| CAROLYN BRIDGES and RAYMOND CUNNINGHAM, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | Case No. 3:21-cv-01091-NJR |
| BLACKSTONE INC. (fka The Blackstone Group Inc.), a Delaware corporation, | ) ) ) | |
| *Defendant.* | ) ) ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT BLACKSTONE INC'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

**SECTION**:                                                                                              **PAGE**:

TABLE OF CONTENTS ..................................................................................................................2

TABLE OF AUTHORITIES ..........................................................................................................3

INTRODUCTION ...........................................................................................................................1

FACTUAL BACKGROUND ...........................................................................................................2

    The Illinois Genetic Information Privacy Act ..........................................................................2

    The Illegal Transfer Of Genetic Testing Information From Ancestry To Blackstone ..................3

    The Parties And Class Members ...............................................................................................3

LEGAL STANDARD ......................................................................................................................4

ARGUMENT ...................................................................................................................................4

    I.    Plaintiffs Sufficiently Plead A Violation Of GIPA. .......................................................4

        A.    Defendant Violated Section 30(a) Of GIPA .......................................................4

        B.    The Legislature's Intent Evidences That GIPA Was Intended To Prevent
              Unauthorized Disclosure Of Genetic Information To Unknown Third Parties. ............9

        C.    Plaintiffs Were Not Required To Allege Improper Disclosure By Blackstone
              To Establish A Violation Of GIPA. ...................................................................12

    II.    Blackstone Cannot Show At The Rule 12(b)(6) Stage That Plaintiffs' Claims Would
        Require An Extraterritorial Application Of Illinois Law..............................................13

CONCLUSION ..............................................................................................................................17

## TABLE OF AUTHORITIES

**CASES:**                                                                    **PAGE(S):**

*Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005)........................................................... 2, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). .......................................................................4

*Gibson v. City of Chicago*, 910 F.2d 1510 (7th Cir. 1990). .........................................................4

*Hanley v. Green Tree Serv., LLC*, 934 F. Supp. 2d 997 (N.D. Ill. 2013). ....................................4

*Int'l Equip. Trading, Ltd. v. Illumina, Inc.*, 312 F. Supp. 3d 725 (N.D. Ill. 2018). ....................16

*Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis.*, 657 F.3d 496 (7th Cir. 2011)...............4

*Lakewood Nursing & Rehab. Ctr., LLC v. Dep't of Pub. Health*, 158 N.E.3d 229 (Ill. 2019)........................9

*Landau v. CNA Fin. Corp.*, 886 N.E.2d 405 (Ill. App. Ct. 2008). ...............................................16

*Monroy v. Shutterfly, Inc.*, No. 16-cv-10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017). .............. 13, 15

*Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474 (2008).................................................................17

*Morrison v. YTB Int'l, Inc.*, 649 F.3d 533 (7th Cir. 2011). ..........................................................14

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019). .............................................................13

*Rivera v. Google, Inc.,* 238 F. Supp. 3d 1088 (N.D. Ill. 2017)..........................................13, 15, 17

*Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197 (Ill. 2019). ............................................ 6, 9

*Rushton v. Dep't of Corr.,* 160 N.E.3d 929 (Ill. 2019)..................................................................4

*Skaperdas v. Country Cas. Ins. Co.*, 28 N.E.3d 747 (Ill. 2015). .............................................. 4, 7

*Smith v. Cent. Ill. Reg'l Airport*, 207 Ill. 2d 578 (2003). ...........................................................17

*Supreme Auto Transp. v. Arcelor Mittal*, 238 F. Supp. 3d 1032 (N.D. Ill. 2017)..........................4

*U.S. Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892 (N.D. Ill. 2019). ........16

*Vance v. Amazon.com Inc.*, 525 F. Supp. 3d 1301 (W.D. Wash. 2021).................................15, 17

*Vance v. Int'l Bus. Machs. Corp.*, No. 20-cv-577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020). 13, 14, 15

*Vance v. Microsoft Corp.*, 525 F. Supp. 3d 1287 (W.D. Wash. 2021)..........................................15

*Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752 (N.D. Ill. 2008). ...................................................16

**STATUTES:**                                                                               **PAGE(S):**

Health Insurance Portability and Accountability Act of 1996 ("HIPAA"),
    Pub. L. 104-191, 110 Stat. 1936, 45 C.F.R. §§ 160, 164...........................................................2

Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA")...........................6, 14, 15

Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq.* ("GIPA"). ..............................passim

**OTHER AUTHORITIES:**                                                                      **PAGE(S):**

*Compel*, Dictionary.com (2021), https://www.dictionary.com/browse/compel....................................7

Patrick R. McDonald, *Modern-Day Robber Baron: The Sins of Blackstone CEO Stephen Schwarzman*,
    Housing Is A Human Right (July 29, 2020),  https://www.housinghumanright.org/modern-day-
    robber-baron-the-sins-of-blackstone-ceo-stephen-schwarzman/ ........................................................7

**RULES:**                                                                                  **PAGE(S):**

Fed. R. Civ. P. 12(b)(6)................................................................................................................. 4, 14

**LEGISLATIVE MATERIALS:**                                                                   **PAGE(S):**

Ill. H.R., 90th Gen. Assemb. (Apr. 15, 1997) (statement of Donald L. Moffitt, Rep., Ill. H.R.)..........10

## INTRODUCTION

In 2008, a concerned Illinois legislature unanimously passed a law holding that genetic testing and information derived from genetic testing (collectively, "genetic testing information") is so sensitive and confidential that it cannot be released without first obtaining informed, written consent. *See* Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq*. ("GIPA"). Defendant Blackstone Inc. ("Blackstone"), a multi-billion-dollar hedge fund, operating as if GIPA does not exist, caused such an unlawful release. Secretly, and without consent, Blackstone compelled the disclosure and release of the private genetic testing information of countless Illinoisans from Ancestry.com DNA, LLC ("Ancestry") to its own possession and for its own benefit. Plaintiffs, two Illinois residents, now sue on behalf of the thousands of other Illinois residents whose unique genetic testing information was covertly transferred.

Blackstone raises two fatally flawed excuses for its noncompliance with GIPA. First, Blackstone ignores its own *admission* that following its acquisition of Ancestry—as disclosed on the Ancestry website—customer's genetic testing information would be released and/or disclosed to Defendant for its own use. Despite this plain admission, Blackstone argues that a recipient acquiring genetic data—"even if obtained by 'compulsion'"—does not violate GIPA. Blackstone is wrong. GIPA's text and intent confirm that genetic testing information is "confidential and privileged" and a corporation cannot—regardless of whether it is in the course of an M&A transaction—without consent, compel its disclosure from another person. Indeed, GIPA expressly provides a private right of action to "[*a*]*ny person aggrieved by a violation of this Act*," not distinguishing between a defendant who discloses or compels genetic testing information.

Second, Blackstone posits that GIPA does not have any express provisions indicating the Act was intended to have extraterritorial effect. That argument fails. The relevant fundamental Illinois public policy protecting its citizens' privacy rights trump Blackstone's extraterritorial argument.

Further, under an *Avery* fact analysis, the relevant circumstances of this case occurred primarily and substantially in Illinois.

The Court should deny Blackstone's motion so that the case can move forward, and Blackstone can be held accountable for seeking to gut GIPA's express goal of allowing Illinois residents to control what happens to their sensitive genetic testing information.

## **FACTUAL BACKGROUND**

### *The Illinois Genetic Information Privacy Act*

Prior to the Illinois legislature's enactment of GIPA, an individual's genetic testing information was not considered confidential under Illinois law. Recognizing its sensitive and unique nature, in 2008, the legislature proclaimed that "[d]espite existing laws, regulations, and professional standards which require or promote voluntary and confidential use of genetic testing information, many members of the public are deterred from seeking genetic testing because of fear that test results will be disclosed without consent in a manner not permitted by law or will be used in a discriminatory manner." 410 ILCS 513/5(2). As a result, Illinois enacted GIPA finding that "[t]he public health will be served by facilitating **voluntary** and **confidential** nondiscriminatory use of genetic testing information." 410 ILCS 513/5(3) (emphasis added).

Under GIPA, genetic testing information[1] "is confidential and privileged and may be released *only* to the individual tested and to persons specifically authorized, in writing, . . . by that individual to receive the information." 410 ILCS 513/15(a) (emphasis added). To protect Illinoisans' genetic testing information, "[n]o person may disclose or be compelled to disclose the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification

---

[1] The terms "genetic information" and "genetic testing" have the meaning ascribed to them under HIPAA, as specified in 45 C.F.R. § 160.103. *See* 410 ILCS 513/10.

of the subject of the test."[2] 410 ILCS 513/30. Compliance with GIPA may be easily accomplished through a single disclosure document--one signed sheet of paper or its electronic equivalent.

### The Illegal Transfer Of Genetic Testing Information From Ancestry To Blackstone

In December 2020, Blackstone, a multi-billion-dollar hedge fund, made a dramatic entry into the genomics space by acquiring Ancestry in a deal valued at $4.7 billion. *See* First Am. Class Acton Compl. ¶¶ 4, 17 ("FAC"). Without providing notice or obtaining consent, Defendant disclosed on the Ancestry website that customer's genetic testing information would be released and disclosed to Defendant for its own use. *Id.* at ¶¶ 27–31. The genetic testing information released to Blackstone can also be paired with customers' personal information, including names and addresses, allowing further identification of individuals. *Id.* at ¶ 30.

In announcing the deal, a senior managing director at Blackstone said he foresees Ancestry growing by "investing behind further data, functionality, and product development." *Id.* at ¶ 27. While completing the acquisition of Ancestry, Blackstone disclosed in regulatory filings that agreements to share information between its affiliated entities have already been implemented and that its effort to package and sell data to unaffiliated third-parties is underway. *Id.* at ¶ 28.

### The Parties And Class Members

Plaintiffs are Illinois residents who assert statutory claims on behalf of an Illinois class. FAC at ¶¶ 15–16, 40. Each provided DNA samples in Illinois and sent those test results to Ancestry for sequencing. *Id.* at ¶¶ 32–35. Due to the highly sensitive nature of DNA testing, together with Ancestry's representations regarding the privacy of its customers' genetic information, Plaintiffs believed that the information submitted would be kept confidential, private, and secure. *Id.* at ¶¶ 36–39. Plaintiffs allege that Defendant compelled the disclosure of their genetic testing information,

---

[2] Both Defendant and Ancestry are private corporations registered to do business in Illinois and thus qualify as "persons" under GIPA. *See* 410 ILCS 513/10.

without consent, through its acquisition of Ancestry. *Id.* at ¶ 31. Because Defendant never obtained the proper consent GIPA requires, Plaintiffs allege the transfer of genetic testing information from Ancestry to Blackstone violates GIPA. *Id.* at ¶¶ 36–39.

## LEGAL STANDARD

A Rule 12(b)(6) motion "tests only the legal sufficiency of the complaint." *Hanley v. Green Tree Serv., LLC,* 934 F. Supp. 2d 997, 980 (N.D. Ill. 2013) (citing *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990)). The court must construe the complaint "in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the plaintiff's] favor." *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis.,* 657 F.3d 496, 502 (7th Cir. 2011). A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief." *Supreme Auto Transp. v. Arcelor Mittal,* 238 F. Supp. 3d 1032, 1036 (N.D. Ill. 2017) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 546 (2007)).

## ARGUMENT

### I.   Plaintiffs Sufficiently Plead A Violation Of GIPA.

#### A.   Defendant Violated Section 30(a) Of GIPA

A basic axiom of statutory interpretation is that "[w]ords and phrases should not be construed in isolation but must be interpreted in light of other relevant provisions of the statute." *Rushton v. Dep't of Corr.,* 160 N.E.3d 929, 934 (Ill. 2019). Additionally, no part of a statute should be rendered meaningless or superfluous. *Id.* Finally, "[u]ndefined terms in the statute must be given their ordinary and popularly understood meaning." *Skaperdas v. Country Cas. Ins. Co.,* 28 N.E.3d 747, 751 (Ill. 2015).

Section 30(a) of GIPA provides "No person may disclose or be compelled to disclose the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test." 410 ILCS 513/30. Defendant argues

that the phrase "or be compelled to disclose" is language that is only intended to "prevent a person who discloses information in violation of GIPA from using compulsion" as a defense. Mot. at 9. That is illogical and contrary to both the plain language and a holistic reading of the statute. Further, were the Court to accept Defendant's reading of Section 30(a), significant portions of the statute would be rendered superfluous and its purpose of ensuring confidentiality of genetic testing information frustrated.

First, Defendant's reading renders the phrase "or be compelled to disclose" meaningless and superfluous because the exact same effect would be achieved by deleting the phrase. If the statute only read "no person may disclose . . ." it would still leave no room for "compulsion" as a valid legal defense to the disclosing entity. Moreover, under Defendant's interpretation, there is no scenario where a person could be held liable for being compelled to disclose the information without simultaneously also being held liable for disclosing such information—thus creating two violations against the same entity for the same single disclosure. Defendant's proposed interpretation thus leads to a scenario in which either a person disclosed the information and is liable for such disclosure, regardless of compulsion, or they did not disclose the information and there is no violation.

This reading of GIPA would render either Section 15(a) or Section 30(a) superfluous because Section 15(a) prevents a person from releasing genetic testing information while Section 30(a) prevents an individual from disclosing genetic testing results—a distinction without a difference. Instead, the more cogent and logical interpretation of GIPA is that it *does* make it illegal to compel the disclosure of genetic information. This would allow the individual the ability to enforce the confidentiality of their genetic information by maintaining a cause of action not only against the disclosing entity, but also against the entity that compelled such disclosure. Thus, Illinois individuals would retain their right to pursue action against any non-exempted entity that obtained their genetic information without consent. Indeed, only this interpretation would preserve the intent of the Illinois Legislature to allay

the fear of Illinois individuals that their "test results will be disclosed without consent." *See* 410 ILCS 513/5(1)–(3).

Defendant's reading of GIPA also disregards the "aggrieved" language used in Section 40—language which is nearly identical to the language used in the Illinois Biometric Information Privacy Act ("BIPA"). BIPA—a similar sensitive information privacy statute that Defendant admits was passed with the same intent as GIPA (Mot. at 7)—was recently as interpreted by the Illinois Supreme Court in *Rosenbach*. In upholding the rights of Illinois individuals to pursue claims under BIPA, the Illinois Supreme Court held that meaning of the word "aggrieved" as used in BIPA provided a private cause of action for any person whose statutorily created rights were violated. *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1207 (Ill. 2019). The *Rosenbach* Court reasoned, "[t]he Act vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent" and determined that, to effectuate the legislature's intent, any person whose statutorily created rights are violated would have a cause of action. *Id.* at 1206. Here, Section 40 of GIPA creates a nearly identical right of action for any person "aggrieved" by a violation of the statute against any "party" who violates the statute—not simply against those that disclose or release genetic testing information. 410 ILCS 513/40. There is no reason to assume that in interpreting GIPA—a nearly identical individual privacy statute—that the Illinois Supreme Court would radically depart from the individual privacy preserving approach taken in *Rosenbach*.

Moreover, in the context of Section 40, Blackstone's interpretation of GIPA Section 30(a) is also illogical. Given that Section 40 creates a private right of action for a person aggrieved by violation of the statute, it would be absurd for an aggrieved person to only have a cause of action against a person who was compelled to disclose genetic test results and not against the person who compelled the disclosure and actually acquired the information. The person who compels disclosure is the one

6

obtaining the confidential genetic information GIPA prohibits them from obtaining. Allowing an action against the releasor and not the person compelling the release would allow the person actually destroying confidentiality to evade liability despite engaging in exactly the kind of behavior GIPA was passed to prohibit.

Defendant's reliance on a legal dictionary's definition of "compel" is also misguided because undefined terms are given their ordinary and popularly understood meanings. *See Skaperdas*, 28 N.E.3d at 751. To "compel" means to "force or oblige (someone) to do something" or "to have a powerful and irresistible effect, influence, etc."[3] The popularly understood meaning of "to compel" another is to influence or obligate that person to do something. The Court should apply this popularly understood meaning rather than a legal dictionary definition and, in doing so, should determine that the plain language of Section 30(a) prevents entities like Defendant from influencing other persons to disclose GIPA-protected information, just like the Statute reads.

Most importantly, Defendant's interpretation of GIPA would also utterly gut GIPA by allowing multibillion dollar hedge funds—like Defendant who has a notorious reputation for doing more harm to everyday consumers than good[4]—to circumvent its protections and obtain confidential genetic information with impunity. Defendant's self-serving position would create a backwards and perverse incentive whereby predatory companies could purchase genetic information from any financially distressed genetic testing company without regard to GIPA. Any subsequent bankruptcy would extinguish such company's liability under GIPA, and the acquiring company would escape liability altogether while being the only viable entity in possession of the confidential genetic information. Of course, this would utterly frustrate GIPA's intended purpose and would leave

---

[3] *Compel*, Dictionary.com (2021), https://www.dictionary.com/browse/compel.
[4] *See, e.g.,* Patrick R. McDonald, *Modern-Day Robber Baron: The Sins of Blackstone CEO Stephen Schwarzman*, Housing Is A Human Right (July 29, 2020), https://www.housinghumanright.org/modern-day-robber-baron-the-sins-of-blackstone-ceo-stephen-schwarzman/.

individuals no recourse. Rather than bolster "public health" and "trust" in genetic testing, this result would erode individuals trust and make them more apprehensive to undergo such testing out of "fear such test results would be disclosed without consent." *See* 410 ILCS 513/5(2). That is exactly what the statute was meant to address.

Blackstone's argument that Section 35 specifically contemplates acquisition or purchase of genetic testing information as being somehow outside the bounds of GIPA's confidentiality protections is also contrary to the statue's plain language. Mot. at 6–7. Instead, the opposite is true. A cursory reading of the entire statute shows numerous enumerated exceptions to the prohibition on release and disclosure of genetic information—but none of them apply to acquisition of genetic information through purchase by a private company such as a multi-billion-dollar hedge fund like Defendant. *See generally* 410 ILCS 513/15(b); 410 ILCS 513/22; 410 ILCS 513/30(a)(3)–(6); 410 ILCS 513/15(b); 410 ILCS 513/31–31.10. To argue otherwise strains credulity. GIPA's exceptions apply in discrete limited circumstances, none of which apply here. However, GIPA prohibits the compelled disclosure that Plaintiffs allege Blackstone engaged in here. 410 ILCS 513/30(a). Section 35 does not provide any such exception, and instead puts a limit on any entity that obtains genetic information from further disclosing it. Here, none of the exceptions codified in GIPA apply to Defendant's conduct and thus Defendant never lawfully came into possession of Plaintiffs' genetic testing information in the first instance such that the provisions of Section 35 are not at issue. In essence, by arguing that Section 35 somehow condones its acquisition of the genetic information at issue, Defendant posits itself as the original entity that obtained it, when the entire crux of Plaintiffs' case is that Defendant is a *secondary* entity that unlawfully obtained his genetic information from Ancestry.com.

In addition, Defendant's interpretation of Section 35 in isolation renders it superfluous because it would achieve the exact same effect as Section 30, preventing entities that are not authorized

to receive genetic testing information from receiving that information without written authorization. However, when given the proper context, it is clear that Section 35 is intended to prevent *further* disclosure by entities which are not *otherwise* violating GIPA by obtaining the genetic information. Thus, by identifying specific exceptions which allow entities to obtain genetic information without consent it is clear that GIPA *is* intended to prohibit obtaining or acquiring confidential genetic information without consent of the individual.

Plaintiffs' First Amended Complaint plainly alleges more than sufficient facts that Defendant violated GIPA's prohibition against compelling the disclosure of the "identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test." 410 ILCS 513/15(a); 410 ILCS 513/30(a); *see* FAC ¶¶ 31, 52, 55. Plaintiffs have been "aggrieved" by Defendant's GIPA violations and should be allowed to vindicate their rights under GIPA.

**B.      The Legislature's Intent Evidences That GIPA Was Intended To Prevent Unauthorized Disclosure Of Genetic Information To Unknown Third Parties.**

GIPA's legislative intent further demonstrates Blackstone's liability. As the Illinois Supreme Court in *Rosenbach* stated, a court's primary objective when interpreting a statute is to give effect to the legislature's intent. *Rosenbach*, 129 N.E.3d at 1204. "In determining legislative intent, a court may consider not only the language of the statute but also the reason and necessity for the law, the problems sought to be remedied, the purpose to be achieved, and the consequences of construing the statute one way or another." *Lakewood Nursing & Rehab. Ctr., LLC v. Dep't of Pub. Health*, 158 N.E.3d 229, 234 (Ill. 2019). Here, the legislature's intent is clear: to create a right of privacy in genetic testing information, to keep such information confidential, and to ensure individuals control who has access to their confidential information.

Statements from GIPA's main sponsor during floor debates make clear that the legislature intended to keep the results of genetic testing confidential and ensure that subjects of genetic testing control access to those results. In the section titled "Legislative Findings; Intent." the text of the statute explicitly announces the legislature's intent to protect genetic testing information and ensure such information remains confidential. *See* 410 ILCS 513/5(2) ("many members of the public are deterred from seeking genetic testing because of fear that test results will be disclosed without consent in a manner not permitted by law or will be used in a discriminatory manner."); 410 ILCS 513/5(3) ("The public health will be served by facilitating voluntary and confidential nondiscriminatory use of genetic testing information."). The legislative debates also evidence the Legislature's intent to create a right of privacy in genetic testing information, to keep such information confidential, and to ensure individuals control who has access to their confidential information.

During the legislative debate prior to the bill's passing, the main sponsor Representative Donald L. Moffitt repeatedly emphasized the intent to protect confidential information.[5] ("This legislation simply says that the results of a DNA or genetic test are confidential, that the person that had the test is the one that is entitled to the results, that no one else can have those results without that person's knowledge or permission, that they would remain confidential.")[6] Moffitt continued, "So we're just saying that this is going to continue to be, we want this to be confidential information."[7] The legislature's intent to ensure that genetic test results remain confidential and that the subject of a genetic test retain control over those results is clear. Critically, there was no discussion about distinguishing liability between a discloser or acquirer of genetic information, as Defendant suggests here.

---

[5] *See* Ill. H.R., 90th Gen. Assemb. (Apr. 15, 1997) (statement of Donald L. Moffitt, Rep., Ill. H.R.) (attached hereto as <u>Exhibit 1</u>).
[6] *Id.* at 189.
[7] *Id.* at 191.

When viewed in this context it is obvious that rather than limit the confidentiality provided by Section 15(a), Section 30(a) is instead intended to strengthen it. Section 30(a) does this by extending GIPA liability to not only the disclosing entity, but also to any other entity that breaks the confidentiality of genetic information by compelling its production. To read Section 30(a) in any other way would render it superfluous and ultimately deal a severe blow to Illinoisans' privacy in their genetic information.

Similarly, Blackstone's argument that Plaintiffs' interpretation would undermine GIPA's purpose is incorrect. As explained above, the legislative language and history of the statute are clear that the purpose of GIPA is to ensure *individuals'* trust in the confidentiality genetic testing—not protecting large investment firms' financial interests in "M&A transaction[s]". Mot. at 6. It is clear from GIPA's language that the focus of the statute is protecting *individuals* and allowing them to achieve better health outcomes by ensuring their genetic information will remain confidential. Defendant's claim that forcing it to comply with GIPA "could have a chilling effect on future investments" is also completely baseless, speculative, and illogical. The rapid rise of the popularity of Ancestry and other consumer genomics companies since the passage of GIPA in 1995, and Ancestry's apparent compliance with GIPA prior to its involvement with Defendant, is proof that maintaining the confidentiality of genetic information is *not* an obstacle to investment but instead a *path* to it. Prior to Defendant's acquisition of Ancestry, Ancestry raised untold millions in investment to advance the growth of its consumer genomics business—all while maintaining the confidentiality of consumers' genetic information. Defendant's position is also disingenuous because it attempts to cast itself as "merely invested" in Ancestry. In reality, rather than simply "invest" in Ancestry, Defendant purchased the entirety of Ancestry, and then unilaterally compelled Ancestry to disclose the confidential genetic information of Plaintiffs and tens of thousands of other Illinois individuals to Blackstone and its other affiliated companies. The Court should reject Defendant's attempt to recast

11

the purpose of GIPA as protecting "investments" in genetic testing companies for what it is—completely tone deaf.

Plaintiffs' claims merely ask that this Court uphold the desire of the people of Illinois, who, through the Legislature passed GIPA to ensure that consumers trust in genetic testing not be irreparably eroded through manifestly severe invasion of their confidential genetic information. Defendant's attempt to persuade the Court that Plaintiffs' theory would somehow chill investment is simply meritless as compliance can be achieved through a single signed sheet of paper or its electronic equivalent. Any compliance with GIPA is minimally burdensome especially when measured against the harm of unauthorized disclosure of confidential genetic testing information. Even assuming *arguendo* that "investment would be chilled," it is simply irrelevant because GIPA is clearly intended to be an "individual" privacy statute. *See* 410 ILCS 513/5(1)(3) ("the use of genetic testing can be useful to an *individual*" and such individuals should not "fear that test results will be disclosed without consent") (emphasis added). In contrast, GIPA is completely silent with respect to "M&A" and "investment."

In short, GIPA gives individuals the right to privacy in their genetic testing information by ensuring that such information remains confidential. Defendant cannot be allowed to end-run around simple compliance with GIPA by disingenuously trying to re-cast the purpose of GIPA as an investor protection statute, rather than the self-evident consumer privacy and public health statute that it is.

### C.    Plaintiffs Were Not Required To Allege Improper Disclosure By Blackstone To Establish A Violation Of GIPA.

Blackstone makes much ado about the fact that Plaintiffs "do not plead as part of their single cause of action that Blackstone disclosed or released genetic information in violation of GIPA." Mot. at 11–13. This is a red herring. Plaintiffs are not required to allege improper disclosure or release of genetic information to establish Blackstone's liability.

GIPA expressly provides that "No person may disclose *or be compelled to disclose* the identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test." 410 ILCS 513/30(a) (emphasis added). As discussed in the preceding sections, a person can violate GIPA both by (i) disclosing a genetic test without consent; or (ii) compelling the disclosure of a genetic test without consent. *Supra* at 6–15. Plaintiffs allege that Blackstone violated GIPA by compelling Ancestry to disclose Plaintiffs' and Class members' genetic testing and information. FAC ¶¶ 31, 52, 53. Plaintiffs are not required to allege anything more to establish liability under GIPA.

Notably, Section 40 of GIPA, which addresses when a person may bring a cause of action for violation of the Statute, does not limit causes of action to the improper disclosure of genetic information, as Blackstone suggests here. The Statute is much broader providing that "*Any person aggrieved by a violation of this Act shall have a right of action* in a State circuit court or as a supplemental claim in a federal district court *against an offending party*." 410 ILCS 513/40 (emphasis added). In other words, the plain language of GIPA provides that any person who has been "aggrieved by a violation of the Statute" in some fashion can sue any party responsible for that violation. For these reasons, Blackstone's attempt to read a heightened "disclosure" requirement into the Statute should be rejected.

## II.   Blackstone Cannot Show At The Rule 12(B)(6) Stage That Plaintiffs' Claims Would Require An Extraterritorial Application Of Illinois Law.

Every court that has considered Blackstone's argument on analogous facts – including Blackstone's own authority—has rejected it as premature on a motion to dismiss. *See, e.g., Vance v. Int'l Bus. Machs. Corp.*, No. 20-cv-577, 2020 WL 5530134, at *3 (N.D. Ill. Sept. 15, 2020) ("*IBM*"); *Rivera v. Google, Inc.,* 238 F. Supp. 3d 1088, 1100–02 (N.D. Ill. 2017); *Monroy v. Shutterfly, Inc.*, No. 16-cv-10984, 2017 WL 4099846, at *5–7 (N.D. Ill. Sept. 15, 2017); *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1275–76 (9th Cir. 2019). Defendant's argument also misrepresents the leading Illinois case on extraterritoriality,

13

*Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005), which emphasizes the highly fact-bound nature of the extraterritoriality inquiry. *Id.* at 854.

In holding that an Illinois statute can be applied if "the circumstances that relate to the disputed transaction occur[red] primarily and substantially in Illinois," the Illinois Supreme Court emphasized the importance of facts in determining where the key circumstances occurred: "we recognize that there is no signal formula or bright-line test for determining whether a transaction occurs within this state. Rather, each case *must be decided on its own facts.*" *Avery*, at 854 (emphasis added). The court then identified and analyzed those facts it considered especially important, including: (a) the location of the harm; (b) the residency of the plaintiff; (c) where communications between the parties took place; and (d) where the defendant carried out its policy. *Id.*[8] The court was able to examine these facts because the case already had been tried.

Applying *Avery*, the Seventh Circuit has held that a district court simply does not have enough facts at the Rule 12(b)(6) stage to dismiss a case under Illinois' extraterritoriality doctrine unless the plaintiff's complaint "*defeats* application of Illinois law" on its face. *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536–38 (7th Cir. 2011). Where a complaint neither compels nor defeats the applicability of Illinois law, a district court is not entitled to resolve the ambiguity on the pleadings alone: "[The district court] did not take evidence, make findings of fact, or weigh the incommensurable factors in *Avery*'s formula; it was *not entitled* to do *any* of these things on a motion to dismiss the complaint." *Id.* (emphasis added).

Most recently, three related opinions have denied motions to dismiss BIPA claims as premature under nearly identical circumstances. In *IBM*, the plaintiffs alleged that they uploaded photographs of their face from within Illinois to Flickr (a California entity) that, unbeknownst to plaintiffs, provided a dataset of these photographs and others from around the world to defendant

---

[8] Because *Avery* concerned a consumer fraud statute, several of the factors relate to details of the transactional relationship between the plaintiff and defendant that are not relevant here, such as were the plaintiffs' insurance estimates were written and where they received relevant brochures. *Id.*

IBM (a New York entity), who then distributed to third parties a dataset containing the biometric data of the plaintiffs and others from around the world. *IBM*, 2020 WL 5530134, at *1 (N.D. Ill. Sept. 15, 2020); *IBM*, ECF No. 113 ¶¶ 40–47. In *Microsoft* and *Amazon*, the plaintiffs alleged that defendants Microsoft and Amazon (both Washington entities) violated BIPA by acquiring the biometric data directly from IBM that IBM created from the photographs it obtained from Yahoo. *Vance v. Microsoft Corp.*, 525 F. Supp. 3d 1287, 1290–91 (W.D. Wash. 2021) ("*Microsoft*"); *Vance v. Amazon.com Inc.*, 525 F. Supp. 3d 1301, 1306–07 (W.D. Wash. 2021) ("*Amazon*").

Like Blackstone, defendants in *IBM*, *Microsoft*, and *Amazon* each argued that BIPA did not apply to their collection of the plaintiffs' information because they never had any contact with the plaintiffs and because any alleged conduct on their behalf took place outside Illinois. *IBM*, 2020 WL 5530134, at *1, 3; *IBM*, ECF No. 36 at 13–16; *Microsoft*, 525 F. Supp. 3d at 1290–94; *Microsoft*, ECF No. 25 at 12–15; *Amazon*, 525 F. Supp. 3d at 1306–09; *Amazon*, ECF No. 18 at 13–15.

These arguments were unanimously rejected. In adopting the holding in *Rivera*, 238 F. Supp. 3d at 1100–02 and *Monroy*, 2017 WL 4099846, at *5–7, the court in *Amazon* found that although discovery was necessary to confirm whether and to what extent the defendant's conduct occurred in Illinois, the plaintiffs' allegations were sufficient to survive dismissal because:

> Plaintiffs, and all purported class members, are Illinois residents who, while in Illinois, uploaded photos that were taken in Illinois. The required disclosures or permissions would have been obtained from Illinois, and so any communication would have necessarily involved Illinois. The alleged harm to privacy interests is ongoing for Illinois residents. Moreover, Plaintiffs allege that [defendant] sells various facial recognition products nationwide, that these products nationwide […] and that the Diversity in Faces dataset 'improve[d] its facial recognition products', thereby allowing the reasonable inference that [defendant] utilized the dataset in Illinois during its business dealings.

*Amazon*, 525 F. Supp. 3d at 1308–09. *See also Microsoft*, 525 F. Supp. 3d at 1290–94; *IBM*, 2020 WL 5530134, at *3.

Just as in *Amazon*, *Microsoft*, and *IBM*, Plaintiffs and all purported class members are Illinois residents who, while in Illinois, submitted their genetic information to Ancestry. *See* FAC ¶¶ 32–39, 40. The required disclosures or permissions would have been obtained in Illinois, and so any communication would have necessarily involved Illinois. *See Id.* at ¶¶ 32–39, 42. The alleged harm to privacy interests is ongoing in Illinois for Illinois residents. *See Id.* at ¶¶ 32–39. Blackstone likewise conducts substantial business within Illinois and knowingly acquired Ancestry, which collects the genetic information in question from Illinois residents, giving rise to the reasonable inference that its Illinois business dealings relate to the collection of genetic information from Illinois residents. *See Id.*, ¶¶ 4, 13.

Blackstone's authority—all of which arises under Illinois fraud statutes—is easily distinguishable because no damages were alleged within Illinois. In *Landau*, for instance, the plaintiff was a Pennsylvania resident filing suit over an insurance policy she bought in Pennsylvania. *Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 408–09 (Ill. App. Ct. 2008). In *U.S. Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 911 (N.D. Ill. 2019), the court dismissed a fraud-based claim because the complaint did not allege where a newsletter was published or whether its readers were located in Illinois, making it too speculative to infer were the damage actually occurred. Likewise, the court in *Int'l Equip. Trading, Ltd. v. Illumina, Inc.*, 312 F. Supp. 3d 725, 733–34 (N.D. Ill. 2018) dismissed fraud claims when the only alleged "lost sale" occurred outside Illinois.[9] In *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008), the court dismissed the plaintiffs' fraud claims when they argued *only* that they were Illinois residents.

On the other hand, as set forth *supra*, "[f]or now, it is enough to say that the allegations survive the accusation that the law is being applied outside of Illinois" because all Plaintiffs are Illinois

---

[9] In ruling, the court distinguished this case from *Int'l Equip. Trading, Ltd. v. Illumina, Inc.*, No. 13-cv-1129, 2013 WL 4599903, at *10–11 (N.D. Ill. Aug. 29, 2013), a similar case brought by the same plaintiff in which the court denied a similar motion to dismiss because the complaint alleged three "lost sales" from *within* Illinois. *Id.*

residents, Illinois is the place of ongoing harm, Blackstone's failure to provide notice and obtain consent occurred in Illinois, and Blackstone purposefully availed itself of related business in Illinois. *Amazon*, 525 F. Supp. 3d at 1309 (citing *Rivera*, 238 F. Supp. 3d at 1102).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order denying Defendant's Motion to Dismiss in its entirety, and granting such further relief as the Court deems reasonable and just.[10]

Dated:  December 9, 2021

Respectfully submitted,

CAROLYN BRIDGES, RAYMOND CUNNIGHAM, individually and on behalf of similarly situated individuals

By: */s/ Gregory L. Shevlin*
Gregory L. Shevlin
**COOK, BARTHOLOMEW, SHEVLIN, COOK & JONES, LLP**
12 West Lincoln St.
Belleville, IL 62220
Phone (618) 235-3500
gls@cbsclaw.com

*One of Plaintiffs' Attorneys*

Gary M. Klinger
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Phone: (202) 429-2290
gklinger@masonllp.com

---

[10] Should the Court grant Defendant's Motion in whole or in part, Plaintiffs request that any such dismissal be made without prejudice to provide Plaintiffs the opportunity to correct any curable defects, as it is well established that a cause of action should not be dismissed with prejudice unless it is clear that no set of facts can be proved under the pleadings which would entitle a plaintiff to relief. *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008) (citing *Smith v. Cent. Ill. Reg'l Airport*, 207 Ill. 2d 578, 584–85 (2003)).

Jonathan M. Jagher
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Phone: (610) 234-6487
jjagher@fklmlaw.com

Brian M. Hogan
**FREED KANNER LONDON
& MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Phone: (224) 632-4500
bhogan@fklmlaw.com

Katrina Carroll
**LYNCH CARPENTER, LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Phone: (312) 750-1265
katrina@lcllp.com

*Attorneys for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2021, I caused a true and correct copy of the foregoing

Plaintiffs' Memorandum Of Law In Opposition To Defendant Blackstone Inc's Motion To Dismiss

to be filed with the Clerk of the Court for the Southern District of Illinois using the Court's CM/ECF

system, which will cause all counsel of record to be served.

Dated: December 9, 2021                           By: */s/ Gregory L. Shevlin*
                                                  Gregory L. Shevlin